(No. 19987. )

RAY S. MANNEN, Appellee, *vs.* EDWARD J. NORRIS *et al.*— (ARLETTA SULCER *et al.* Appellants.)

*Opinion filed February 21, 1930.*

FRANK G. THOMPSON, and E. M. PEAVLER, for appellants.

CURTIS WILLIAMS, and GILBERT & GILBERT, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

The Third National Bank of Mt. Vernon, a judgment creditor of Edward J. Norris, filed its bill in chancery in the circuit court of Jefferson county against Norris and others to set aside a deed made by Norris to his daughter, Arletta Sulcer, dated July 20, 1925, and placed of record on January 8, 1926, on the ground that the deed was made without consideration and in fraud of the creditors of Norris. Thereafter, on January 4, 1927, Norris filed a voluntary petition in bankruptcy, was adjudged a bankrupt, and appellee, Ray S. Mannen, was appointed as trustee in bankruptcy of Norris' estate. Thereafter appellee appeared in the cause and moved for leave to be made a party complainant in his official capacity, and prayed that the conveyance, including the deed and the record thereof, be set aside, vacated and declared null and void and canceled of record as to the trustee, and that said real estate may be added to the *corpus* of the estate of which he is trustee. Answers denying the allegations of want of consideration and intent to defraud creditors were filed, the cause was heard by the chancellor in open court at the July, 1929, term, and a decree was entered finding, among other things, "that on the date of the execution of said deed the said grantor, Edward J. Norris, was wholly insolvent and without money or property to pay his outstanding obligations; that at the time of said conveyance the said Edward J. Norris was indebted to various persons, firms and corporations in amounts aggregating more than forty thousand dollars, ($40,000,) and that his assets did not exceed in value the sum of fifteen thousand dollars ($15,000); that the said deed of conveyance was not made in good faith for a valuable consideration but was an attempt by the grantor, Edward J. Norris, to make a gift of the premises in question

to his daughter, Arletta Sulcer, at a time when said grantor was insolvent, and such conveyance was made for the purpose of hindering, delaying and defrauding the creditors of the said Edward J. Norris, and that the said Arletta Sulcer paid no consideration whatever for the said premises, and that the said Arletta Sulcer was and is holding the record title to said described premises for the use and benefit of the creditors of the said Edward J. Norris; that said conveyance is null and void and of no virtue, force and effect as against the complainant, Ray S. Mannen, as trustee in bankruptcy." The decree ordered and adjudged that the deed and the record thereof be set aside, vacated, canceled of record and held for naught, and all of the right, title and interest of Norris in and to the described premises as of the date of the conveyance be vested in the complainant, Mannen, as trustee in bankruptcy of the estate of Norris, a bankrupt, for the use and benefit of the creditors of the bankrupt estate, to be administered by the trustee under the orders and directions of the United States district court for the eastern district of Illinois; that the defendants Arletta Sulcer and J. S. Sulcer deliver up the possession of the described premises immediately to the trustee in bankruptcy and that Arletta Sulcer pay the costs of this suit. From this decree Arletta Sulcer and her husband, J. S. Sulcer, have perfected an appeal to this court.

Arletta Sulcer, daughter of Edward J. Norris, together with her husband, rented the land in question from Norris in December, 1915, moved upon the land, and from time to time until judgments were entered in favor of banks against her father, in January, 1926, they delivered one-third of the crops and one-half the hay to Norris. Mrs. Sulcer testified that in July, 1920, Norris came to her home at a time when her husband was present and asked them to purchase the premises in question; that they told him they did not think they were able to buy it; that he said he would fix it so that they could pay for it; that he

said they could pay for it in yearly payments—pay him $2600 in money and a landlord's rental between 1920 and 1925 each year; that they paid him $2000 in money; that he allowed them $600 for moving on his place in 1921 and assisting him in his work, because her younger sister married and he had no one to live with him and was getting up in years and had had pneumonia during the winter; that at the time the payments were made to him they were made by her husband in her presence; that six receipts offered in evidence, dated July 28, 1920, for $600, August 10, 1921, for $400, August 15, 1922, for $300, August 12, 1923, for $225, September 10, 1924, for $175, and July 20, 1925, for $300, respectively, were written by her father on the dates which they respectively bore and that at the dates of such receipts her husband paid to Norris in cash the sums mentioned in the respective receipts; that on July 20, 1925, Norris said that he would make them a deed for the premises, and he made the deed in question on that day; that the deed was made in her name because they had another piece of land in her husband's name for which she had helped to pay; that the time they made this agreement with her father she did not know that her father owed any money or that he was on any notes; that she accepted the deed in question without any intent of defrauding any creditors of her father; that her father did not give them a receipt for the $600 which he allowed them for the year which they lived with him; that he got the landlord's share of the crops, which was one-third of the corn and wheat and one-half of the hay, during those years; that her father paid the taxes but her husband always paid him back in cash; that they took no receipts from her father for the money which they paid him for the taxes; that the six receipts were in a drawer in a writing desk until the bringing of the suit, which was about three years before the time when she was testifying, at which time they were taken by her husband and given by him to the attorney who was con-

ducting her examination, and that she had not seen them from that time until the day of her testimony. She was corroborated in her testimony by Norris and by her husband, the testimony of the latter being heard by the court subject to an objection by appellee as to its competency.

The weight of the testimony is minimized by the facts that although the deed was not to be made for five years after the contract there was no written evidence of the contract; that no persons other than themselves were present at the time of the making of the contract or of any of the payments; that there was no evidence as to the source from which the money was obtained or as to its disposition by Norris; that Norris paid for labor on the land and all the taxes thereon and collected the amounts paid for taxes in cash from Sulcer, although the same tax collector called upon the Sulcers each year and collected taxes from them; that the deed was not recorded until the day a judgment by confession was entered in the circuit court against Norris and four days after Norris had been threatened with judgment; that while Norris had a bank account and made frequent deposits, almost entirely of small items ranging from $1.50 and $2 upwards, none of the money received in payment for the land or the taxes was deposited by him; that while Sulcer had a bank account, to which he made several deposits each month, its daily balance only averaged from $25 to $30, and its examination showed it was not the source from which Sulcer obtained the money to make the payments; the inability to furnish any reasonable explanation of the failure of both Sulcer and Norris to deposit such funds in the bank, their interest in the result of the suit, and the fact that three bank officials, after an examination of the six receipts (identified by Norris and Sulcer) introduced in evidence as exhibits and as such certified to this court for our inspection, testified that in their opinion these receipts were all written by Norris with a

lead pencil at one time and not at the various dates which they bore.

While the general rule is that positive testimony of a witness, uncontradicted and unimpeached either by positive or uncontradicted evidence, cannot be disregarded, it is also true that there may be such an inherent improbability in the testimony of the witness as to induce the court or jury to disregard it, even in the absence of conflicting testimony. He may be contradicted by the facts he states as well as by adverse testimony, and there may be so many omissions in the account of the particular transaction or in his own conduct as to discredit his whole story. (*Kuehne* v. *Malach,* 286 Ill. 120; *People* v. *Davis,* 269 id. 256.) If his testimony is contradictory of the laws of nature or universal human experience, so as to be incredible and beyond the limits of human belief, or if facts stated by the witness demonstrate the falsity of the testimony, the court is not bound to believe him. *Kelly* v. *Jones,* 290 Ill. 375; *Podolski* v. *Stone,* 186 id. 540.

The evidence in this case was heard by the chancellor in open court. He saw and heard the witnesses and observed their manner of testifying and was in a better position to determine the weight to be given to their testimony than we are. Before we would be authorized to reverse the decree on the ground that it was not supported by the evidence we must be able to say that it was palpably contrary to the weight of the evidence. (*Moore* v. *Moore,* 335 Ill. 517; *Cook* v. *Wolf,* 296 id. 27; *Fabrice* v. *Von der Brelie,* 190 id. 460.) After a careful examination of the evidence in the case we are unable to say that the findings and decree of the chancellor are so palpably against the weight of the evidence as to justify a reversal of the decree.

The decree of the circuit court is affirmed.

*Decree affirmed.*