(No. 23873.—

CHARLES W. HADLEY *et al.* Appellees, *vs.* JENNIE F. WHITE *et al.*—(GEORGE C. SUTTON, Appellant.)

*Opinion filed October 15, 1937—Rehearing petition stricken December 8, 1937.*

JOHN K. NEWHALL, WALTER H. SHURTLEFF, JOHN W. MARSHALL, and OSCAR M. MEUSEL, for appellant.

PALMER LEREN, and FREDERICK C. HARBOUR, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

At the time of the commencement of this litigation and prior thereto, Charles W. Hadley, Harry G. Weaver and John S. Woodward, were lawyers practicing at Wheaton, in this State, under the firm name of Hadley, Weaver and Woodward. For a number of years prior to the filing of the original complaint herein, this firm represented the defendant Jennie F. White, in various matters of investigation and litigation, and as a result of those services secured a judgment against her on December 16, 1932, for the sum of $2000, which was entered in the circuit court of DuPage county on a trial before a jury. Jennie F. White had been married to the appellant, George C. Sutton, in the autumn of 1921, which marriage was ended by annulment in 1927. She thereafter married one Frank M. White, from whom she separated in 1928 and was divorced in 1932, taking back her maiden name of Erickson. The real estate herein involved was purchased by Mrs. Erickson (by which name she will be called in this opinion) in 1922 or 1923, while she was living on the premises and where

she has continued to live ever since, operating the property as a boarding and rooming house.

On June 19, 1932, Mrs. Erickson made a warranty deed to her former husband, the appellant Sutton, who appears to have been living at her house at the time, and the complaint in this case, in the nature of a creditor's bill to set aside that conveyance, was filed in July of 1934. About ten days after this complaint was filed, Mrs. Erickson filed her voluntary petition in bankruptcy, whereupon the intervening plaintiff, Lee O. Farnsworth, was appointed trustee. He later was allowed to intervene and become a co-plaintiff in this litigation. Issues were joined on the complaint and intervening complaint, the cause was heard before the court without a jury and a decree entered from which Sutton alone has appealed. By that decree the court found that the conveyance by deed of June 18, 1932, was a sham and, with the knowledge of Sutton, fraudulently made to hinder and delay Mrs. Erickson's creditors. It was ordered that the deed be set aside and be held for naught as against Mrs. Erickson's creditors; that the real estate described in it be a part of her estate in bankruptcy, and it was further specifically ordered that she and the appellant Sutton convey all of their right, title and interest in the premises to the intervening plaintiff, as trustee in bankruptcy, and that, in default of such conveyance, the same should be made by the master in chancery of the court.

Appellant contends that at the time this deed was executed Mrs. Erickson owed him the sum of $10,340; that her equity in the real estate in question did not exceed $5000, and that he accepted a conveyance of this equity, in good faith, as a cancellation of her indebtedness to him. The existence of such an indebtedness was sought to be established by certain promissory notes and receipts, ten in number, photostatic copies of which appear in the record and which, if genuine and representative of actual and *bona fide* transactions, would fully sustain this contention.

The trustee contends that these transactions are for the most part fictitious; that except for about $1250 which is shown to have actually passed between the parties, there is no credible evidence of any financial transactions between them, and that, as to these items amounting to $1250, they were mere gifts arising out of the relationship of the parties and never intended as loans or debts, the repayment of which would be exacted at all events.

We have long adhered to the rule that when a chancellor has heard the testimony in open court, has had an opportunity to see the witnesses and listen to their testimony from the stand, we will not reverse his findings of fact unless we are able to say that they are palpably contrary to the weight of the testimony. (*Cook* v. *Wolf,* 296 Ill. 27; *Moore* v. *Moore,* 335 id. 517; *Hall* v. *Pittenger,* 365 id. 135.) The rule applies in this case because the basically essential questions for the court to try were ones of fact,—*i. e.,* whether or not there was a valid subsisting debt from Mrs. Erickson to the appellant Sutton, payment of which would be exacted regardless of the fortunes of the debtor, and whether the transaction was fraudulent. On the question of fraud it was the duty of the chancellor to consider the testimony of the witnesses and all facts and circumstances shown. As we said in *Garlick* v. *Imgruet,* 340 Ill. 136, "direct evidence is not always available to prove fraud and it must often be inferred from the facts and circumstances shown." The briefs present no serious controversy as to any important question of law and we will, therefore, limit our review to such portions of the record as will permit us to determine whether or not the chancellor was manifestly or palpably wrong, or his conclusions manifestly erroneous. *Hall* v. *Pittenger, supra.*

It will be unnecessary to examine in detail all of the receipts and notes upon which the appellant relied to establish consideration for the transfer in question, because they are all very much alike and subject to the same comment.

The first one in the record was a receipt dated December 15, 1927, given by Mrs. Erickson to Sutton, in the sum of $2700, which is stated to be a loan at six per cent interest, to be repaid on December 15, 1931, "secured by my property at 246 S. Kenilworth Av. Elmhurst." As to this, Sutton testified that he gave Mrs. Erickson $2700 on Thanksgiving day, 1927, and that he withdrew most of it from a safety deposit box at the Drexel State Bank. As to the same item, he testified before the referee in bankruptcy, that he gave her this money a few days before December 15, the date of the receipt, and that approximately $2000 of it was from the safety deposit box, but that $400 or $500 of it came from his savings account in the Rockford National Bank. As to the same exhibit Mrs. Erickson testified on the trial that she received the $2700, in cash, about Thanksgiving day, but could not say what she did with the money. She mentioned various payments that she claimed to have made with it and stated repeatedly that she had books of account in her own handwriting, bank statements, checks, etc., which showed all of these items. The bank records in evidence showed that Sutton made only one withdrawal during the year 1927 from his savings account in the Rockford National Bank, which was for $190 on December 1; that the only withdrawals during that year from a savings account maintained jointly by Sutton and Mrs. Erickson at the Drexel State Bank, were $105 on March 29, and $200 on May 2. The safety deposit box which Sutton had prior thereto at the Drexel State Bank was surrendered on November 18, 1927. Mrs. Erickson produced no records showing the receipt or deposit of the $2700, nor any records showing any of the other payments she claimed to have made from that money. In Sutton's first testimony he said he withdrew the $2000 from the Drexel State Bank deposit box on December 15, but at the later hearing, when confronted with the bank's records showing that his box had been surrendered on No-

vember 18, he testified he took the money out of the box on that day. If this is true, he either carried it on his person or placed it in some undisclosed place of storage from that date until Thanksgiving, or until December 15, the date of the receipt.

The next note in the record claimed to have been given by Mrs. Erickson to Sutton is dated December 26, 1928, for the sum of $2200. As to this, Sutton testified that he gave this money to Mrs. Erickson, in cash, about Christmas time, and that it came from withdrawals from his savings account and from his safety deposit box in the Rockford bank. Before the referee he testified that over $2000 of it came from the safety deposit box and that close to $1000 of this was withdrawn from his savings account in Rockford, during the year. Mrs. Erickson testified that she did not know what she did with the money but supposed she paid bills. Before the referee she had previously testified that she placed all this money in the bank, mostly in the Elmhurst State Bank, and that she had borrowed this $2200 to pay Mr. Weaver and to pay a detective, who appears to have been employed in one of her previous divorce cases. It later appeared that she paid Mr. Weaver only $25, and the detective $30, about nine months later. The records of the various banks show that Sutton withdrew only $160 from the Rockford bank in December, 1928, and only $355 during the whole year; that he made no withdrawals from the Drexel State Bank in that year, and that the only time he entered his safety deposit box during that year was in April, about eight months prior to the date of the note. Mrs. Erickson's bank records show that her total deposits in December were $687, of which only $66 was deposited after the date of the note; that her total deposits in January were only $563.85, which was less than her income from her boarding house. Without extensive quotation of unnecessary figures, it can be said that none of her books of account

or bank records substantiated any of her testimony in the slightest degree.

The same may be said as to each of the eight other exhibits of notes and receipts and it would uselessly prolong this opinion to go into the details of each of them. As this court has frequently pointed out, the testimony of a witness may contain, within itself, its own impeachment, and he may be contradicted by what he states as well as by adverse testimony, and there may be so many omissions, discrepancies and improbabilities in his testimony as to justify a court or jury in disregarding it in its entirety. (*Mannen* v. *Norris,* 338 Ill. 322; *Kuehne* v. *Malach,* 286 id. 120; *Kelly* v. *Jones,* 290 id. 375; *People* v. *Bentley,* 357 id. 82.) In *Kennard* v. *Curran,* 239 Ill. 122, which was an action to set aside a deed in fraud of creditors we said: "The fact that he stated he did not intend to defraud creditors, even though he may not be contradicted by any direct testimony, did not bind the court to believe him, if from the other evidence or from the inherent improbability or contradictions in the testimony the court was satisfied of the falsity of the statements. (*Larson* v. *Glos,* 235 Ill. 584; *Podolski* v. *Stone,* 186 id. 540.) Intent to defraud creditors by the conveyance of property may be ascertained by inference, from the circumstances surrounding the transactions.—*Hughes* v. *Noyes, supra; Higgins* v. *Higgins,* 219 Ill. 146."

Another circumstance of which there is evidence, and which, in and of itself, would be sufficient to sustain the decree of the chancellor, is shown by the record. The notary public who took the acknowledgment to the deed which was set aside by the decree, testified that Sutton and Mrs. Erickson, accompanied by two other persons, came to his residence with two deeds, one from Mrs. Erickson to Sutton and the other from Sutton back to Mrs. Erickson, and that he took the acknowledgment to both deeds. He said he remembered the transction because it was the

first time he had ever taken two acknowledgments at one time; that he asked them why they transferred the property and then transferred it back, and that the woman said that they had had a little bit of trouble and that she wanted to transfer the property to Sutton and also wanted to protect herself in reversing it. He said he affixed his notarial seal and that the woman took both papers and left. Sutton's testimony before the referee would corroborate this, as he there testified that he had signed the deed at the notary's office, which would be unnecessary in the deed to him.

Mrs. Katherine Keeler, an expert examiner of questioned documents testified that, in her opinion, substantiated by enlarged photographs and other scientific comparisons, exhibits 2, 3, 8, 4, 7, 5, 6 and 10 (being all the notes and receipts except 1 and 9) were written with the same very defective pen. She also testified to other comparisons as to ink, paper, matters of indentation, etc., which would indicate that one of the notes had been used as an example for writing the others. An inference of fact can readily be drawn from her testimony that the notes were not written on the dates they bore over the period of time indicated.

Appellants contend that because the plaintiffs called Sutton and Mrs. Erickson to the witness stand they are bound by the testimony which they gave, and that such testimony must be taken as true. These witnesses were called pursuant to section 60 of the Civil Practice act which provides as follows: "Upon the trial of any case any party thereto or any person for whose immediate benefit such action is prosecuted or defended, or the officers, directors, or managing agents of any corporation, which is a party to the action, may be examined, as if under cross-examination, at the instance of the adverse party or parties or any of them, and for that purpose may be compelled, in the same manner and subject to the same rules for examination as any other witness, to testify, but the party call-

ing for such examination shall not be concluded thereby but may rebut the testimony thus given by counter testimony." (State Bar Stat. 1935, chap. 110, par. 188; Smith-Hurd Stat. 1935, chap. 110, par. 184.) This section is remedial in its nature and was evidently intended to avoid the effect, as far as the parties in interest are concerned, of the very rule upon which the appellants rely. The point is not well taken.

We are of the opinion that the findings of the chancellor are well supported by competent evidence and that no other result could or should have been arrived at.

No other questions are raised in the briefs and the decree will be affirmed.

*Decree affirmed.*