BUCKTOWN PARTNERS, Plaintiff-Appellees, *v.* SANIAH JOHNSON, Defendant-Appellant—(Main Bank of Chicago, Garnishee-Defendant).

First District (4th Division)  No. 82—2801

Opinion filed November 10, 1983.

Les Jin and Alan Alop, both of 18th Street Legal Services, and James O. Latturner, of Uptown Legal Services, both of Chicago, for appellant.

Margaret Scanlan Brown, of Epstein, Grosby & Adler, Ltd., of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

This action challenges the authority of the trial court to disregard the allegedly uncontradicted testimony of a party witness. The plaintiff, Bucktown Partners, brought a forcible entry and detainer action against the defendant, Saniah Johnson, for nonpayment of rent. The trial court entered judgment against the defendant in the amount of $560. A garnishment proceeding was subsequently initiated against the defendant's bank to collect the judgment. The defendant moved to quash the garnishment because the funds in her account were allegedly public assistance payments that were exempt from garnishment under article IV of the Illinois Public Aid Code. (Ill. Rev. Stat. 1981, ch. 23, par. 11—3.) The trial court denied the defendant's motion, and this appeal followed.

The substance of this appeal revolves around the fact that the defendant was the sole witness to testify during the hearing on the motion to quash the garnishment. She stated that she received $368 per month in public assistance benefits and $168 per month in food stamps to support herself and her three children. She further testified that public assistance was her sole source of income and that all of the funds in her bank account came from public assistance benefits. The defendant's bank ledger card was introduced into evidence and it reflected the following transactions:

| Withdrawals | Deposits | Date | Balance |
|---|---|---|---|
| | $502.56 | 4-15-82 | $502.56 |
| | 280.00 | 4-19-82 | 782.56 |
| | 280.00 | 5-17-82 | 1,062.56 |
| $20.00 | | 5-28-82 | 1,042.56 |
| 15.00 | | 6- 8-82 | 1,027.56 |
| 630.00 | | 6-14-82 | 397.56 |
| | 280.00 | | |
| | 620.00 | 6-15-82 | 1,297.56 |
| 675.00 | | 6-16-82 | 622.56 |
| 170.00 | | 6-21-82 | 452.56 |
| 25.00 | | 6-24-82 | 427.56 |
| 25.00 | | 6-28-82 | 402.56 |

The ledger card thus reflected five deposits which were completed by

the defendant. Other than the defendant's representation that all of the money in the account came from aid payments, the source of the initial deposit of $502.56 was not referred to at the hearing by either party. Regarding the three deposits of $280 each, the defendant testified that she did not pay her $280 rent to the plaintiff for three months and that she deposited the $280 into her bank account during each of those months. The remaining deposit of $620 was explained by the defendant to be a partial redeposit of the $630 that was withdrawn the previous day. Specifically, the defendant testified that she withdrew the $630 to pay the rent and security deposit on a new apartment and that the new landlord refused to accept the certified check offered by the defendant. Therefore, the defendant allegedly redeposited the money into her account. Other relevant facts that were elicited at trial shall be discussed later in this opinion.

The plaintiff offered no evidence to the effect that the funds in the defendant's bank account stemmed from a source other than the defendant's aid payments. Rather, the plaintiff contends that the defendant's testimony was contradictory and confused and was therefore unworthy of belief. The trial court found it "hard to fathom how a woman with three children getting $368 from the public aid agency and is paying $280 [in rent] can have over $1000 in the bank ***." Consequently, the trial court denied the defendant's motion to quash the garnishment.

In essence, the trial court chose simply to discount the defendant's testimony and concluded, contrary to her representations, that the funds in her account came from a source other than public assistance payments. On appeal, our sole concern is whether the trial court has the authority under Illinois law to disbelieve the testimony of a witness that is uncontradicted on a material issue. Specifically, the defendant remained totally uncontradicted and unimpeached regarding her statement that all of the money in her account came from assistance payments. While she may have been contradicted on matters other than the source of these funds, as we shall discuss later, the record is devoid of any evidence which contradicts the defendant's statement that the source of the money in her account was her assistance payments.

During the course of our examination of this issue, we have surveyed the case law of a number of States. Several jurisdictions simply hold that the trier of fact is not bound to believe uncontroverted testimony. (*Cragin v. Woollett* (1962), 104 N.H. 202, 182 A.2d 457; *Carl v. Kurtz* (1978), 255 Pa. Super. 198, 386 A.2d 577; *Gee v. Gee* (Mo. App. 1980), 605 S.W.2d 815; *Moser v. Brown* (Iowa 1977), 249 N.W.2d 612;

*McPhaul v. Sewell* (1978), 36 N.C. App. 312, 244 S.E.2d 158; *Morphew v. Morphew* (Ind. App. 1981), 419 N.E.2d 770; *Piemonte v. New Boston Garden Corp.* (1979), 377 Mass. 719, 387 N.E.2d 1145; *Baliulis v. Campbell Soup Co.* (1979), 204 Neb. 739, 285 N.W.2d 227; see also 7 Wigmore, Evidence sec. 2034, at 260-61 (3d ed. 1940).) The rationale often given for allowing the rejection of uncontradicted testimony is that the trier of fact is generally in the best position to measure the persuasiveness of evidence and the credibility of witnesses. (See, *e.g., 93 Clearing House, Inc. v. Khoury* (1980), 120 N.H. 346, 415 A.2d 671; *Gee v. Gee* (Mo. App. 1980), 605 S.W.2d 815.) Similarly, other courts observe that the trier of fact is the sole judge of a witness' credibility (*McPhaul v. Sewell* (1978), 36 N.C. App. 312, 244 S.E.2d 158), or that it is the trier of fact's prerogative to disbelieve a witness' testimony (*Carl v. Kurtz* (1978), 255 Pa. Super. 198, 386 A.2d 577).

A number of other States also allow the trier of fact to disregard a witness' uncontradicted testimony, but only if the witness is either a party or someone else who has an interest in the outcome of the suit. (*Rowe v. Goldberg Film Delivery LInes, Inc.* (1937), 50 Ariz. 349, 72 P.2d 432; *Smith v. Edward M. Rude Carrier Corp.* (1966), 151 W. Va. 322, 151 S.E.2d 738; *Belinskey v. Hansen* (N.D. 1977), 261 N.W.2d 390; see also *Rea v. Rea* (1978), 19 Wash. App. 496, 576 P.2d 84; *City of St. Petersburg v. Vanoy Park Hotel Co.* (Fla. App. 1977), 352 So. 2d 149.) One court phrased this approach in a different manner, stating that the uncontradicted testimony of an interested witness only raises an issue of fact. (*Purser v. Purser* (Tex. Civ. App. 1980), 604 S.W.2d 411.) The rationale for allowing the rejection of the testimony of an interested witness is that his personal interest in the result may lead him to testify contrary to the facts of the case. See *Rowe v. Goldberg Film Delivery Lines, Inc.* (1937), 50 Ariz. 349, 72 P.2d 432.

Many of the jurisdictions we have surveyed, however, find that the positive uncontradicted testimony of a witness is either conclusive upon the trier of fact or may not be disregarded by the fact finder unless certain exceptions are satisfied. Most of the States hold that such testimony may be disregarded if it is "inherently improbable" (*Laganiere v. Bonte Spinning Co.* (1967), 103 R.I. 191, 236 A.2d 256; *Dinneen v. Finch* (1979), 100 Idaho 620, 603 P.2d 575; *Auto Sales & Finance Co. v. Seavey* (Me. 1979), 401 A.2d 648; *Lopez v. Maes* (1970), 81 N.M. 693, 472 P.2d 658; *Thomas v. Thomas* (Okla. App. 1976), 565 P.2d 722; *Douglas Reservoirs Water Users Association v. Cross* (Wyo. 1977), 569 P.2d 1280), if it is contradictory or otherwise impeached (*Laganiere v. Bonte Spinning Co.* (1967), 103 R.I. 191, 236

A.2d 256; *Dinneen v. Finch* (1979), 100 Idaho 620, 603 P.2d 575; *Frey v. Montgomery Ward & Co.* (Minn. 1977), 258 N.W.2d 782; *City of St. Petersburg v. Vinoy Park Hotel Co.* (Fla. App. 1977), 352 So. 2d 149; *Lopez v. Maes* (1970), 81 N.M. 693, 472 P.2d 658; *Spillers v. Colby* (Okla. 1964), 391 P.2d 895), if it lacks credence or is unworthy of belief (*Laganiere v. Bonte Spinning Co.* (1967), 103 R.I. 191, 236 A.2d 256; *McGuire v. American Honda Co.* (1977), 173 Mont. 171, 566 P.2d 1124), if it is surrounded by suspicious circumstances (*Lopez v. Maes* (1970), 81 N.M. 693, 472 P.2d 658), if it is evasive, impossible and equivocal (*Douglas Reservoirs Water Users Association v. Cross* (Wyo. 1977), 569 P.2d 1280), if it is made improbable by direct or circumstantial evidence (*In re New England Telephone & Telegraph Co.* (1977), 135 Vt. 527, 382 A.2d 826, *appeal after rem. sub nom., Petition of New England Telephone & Telegraph Co.* (1981), 139 Vt. 578, 433 A.2d 263; *Frey v. Montgomery Ward & Co.* (Minn. 1977), 258 N.W.2d 782; *Spillers v. Colby* (Okla. 1964), 391 P.2d 895), or if legitimate inferences cast a reasonable doubt upon the truth or accuracy of the testimony (*Lopez v. Maes* (1970), 81 N.M. 693, 472 P.2d 658). A few States even require that the basis for recognizing an exception must be specifically stated in the record or else the uncontradicted evidence is conclusive upon the trier of fact. (*Laganiere v. Bonte Spinning Co.* (1967), 103 R.I. 191, 236 A.2d 256; *State v. A. Capuano Brothers* (1978), 120 R.I. 58, 384 A.2d 610; *O'Leary v. Wangensteen* (1928), 175 Minn. 368, 221 N.W. 430.) Of the exceptions, the most widely recognized is that which allows the trier of fact to disregard "inherently improbable" testimony. However, few guidelines are provided to determine whether testimony meets the inherent improbability standard. At least one court has found that in order to reject testimony as inherently improbable, there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent without any resort to inferences or deductions. *Dinneen v. Finch* (1979), 100 Idaho 620, 603 P.2d 575; *Arundel v. Turk* (1936), 16 Cal. App. 2d 293, 60 P.2d 486; but see *Foreman & Clark Corp. v. Fallon* (1971), 3 Cal. 3d 875, 479 P.2d 362, 92 Cal. Rptr. 962.

Many of the States which recognize one or more of the above exceptions note that the trial court does not have the authority to arbitrarily or capriciously disregard the uncontroverted testimony of a witness. *Laganiere v. Bonte Spinning Co.* (1967), 103 R.I. 191, 236 A.2d 256; *Frey v. Montgomery Ward & Co.* (Minn. 1977), 258 N.W.2d 782; *Smith v. Edward M. Rude Carrier Corp.* (1966), 151 W. Va. 322, 151 S.E.2d 738; *Douglas Reservoirs Water Users Association v. Cross* (Wyo. 1977), 569 P.2d 1280; *Foreman & Clark Corp. v. Fallon* (1971),

3 Cal. 3d 875, 479 P.2d 362, 92 Cal. Rptr. 962.

A disinterested witness' uncontradicted testimony may not be disregarded in certain jurisdictions unless an exception is present. (See, e.g., *Fleitz v. Van Westrienen* (1977), 114 Ariz. 246, 560 P.2d 430; *Rowe v. Goldberg Film Delivery LInes, Inc.* (1937), 50 Ariz. 349, 72 P.2d 432.) However, most courts hold that the uncontradicted testimony of *any* witness, including a party or interested witness, cannot be disregarded unless an exception is satisfied. See, e.g., *Dinneen v. Finch* (1979), 100 Idaho 620, 603 P.2d 575; *O'Leary v. Wangensteen* (1928), 175 Minn. 368, 221 N.W. 430.

It is against this backdrop of diverse case law that we examine the current state of the law in Illinois. The Illinois Supreme Court recently reiterated that "[w]here the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded even by a jury." (*People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85, 430 N.E.2d 1126, 1127; accord, *Larson v. Glos* (1908), 235 Ill. 584, 85 N.E. 926; *Dill v. Widman* (1952), 413 Ill. 448, 109 N.E.2d 765; *Kelly v. Jones* (1919), 290 Ill. 375, 125 N.E. 334.) *People ex rel. Brown v. Baker* was a paternity action where the child's mother testified without contradiction that the defendant was the child's father. The defendant testified that he had frequently had intercourse with the mother during the time period in question. He further testified that another man was a personal friend of the mother who had dated the mother's sister in the past. This male friend testified at trial and stated that he had never had intercourse with the mother. A jury subsequently returned a verdict of not guilty. The trial judge denied the mother's motion for judgment *n.o.v.*, stating that while he may have returned a verdict different than that of the jury, he thought the mother was "a little flakey" and the male friend was a "wouldn't look anybody in the eye type." The supreme court affirmed the appellate court's reversal of the case, observing that, "[w]hile we agree that the credibility of witnesses and the weight to be accorded their testimony are typically jury considerations [citations], a jury cannot arbitrarily or capriciously reject the testimony of an unimpeached witness [citations]." *People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85, 430 N.E.2d 1126, 1127.

■ Furthermore, earlier Illinois decisions have held that an uncontradicted witness'. testimony may be disregarded if it contains so many omissions as to discredit it. (*Mannen v. Norris* (1930), 338 Ill. 322, 170 N.E. 273; *People v. Davis* (1915), 269 Ill. 256, 110 N.E. 9.) While Illinois recognizes no presumption that an .unimpeached witness

has testified truthfully for purposes of jury instructions (*Hauser v. People* (1904), 210 Ill. 253, 71 N.E. 416; *Chicago Union Traction Co. v. O'Brien* (1905), 219 Ill. 303, 76 N.E. 341), we think that the above line of supreme court cases establishes that the unimpeached testimony of a witness must be taken as established unless one of the recognized exceptions is present.

We have also encountered a line of Illinois Appellate Court criminal cases which contain language tending to suggest that the finder of fact is to be accorded a greater degree of discretion in accepting or rejecting the uncontradicted testimony of a witness. However, upon close scrutiny we find that those cases also support the holdings of the Illinois Supreme Court that we have cited. Thus, in *People v. Lester* (1981), 102 Ill. App. 3d 761, 766, 430 N.E.2d 358, 362, the court made the broad statement that "Where a defendant's out of court statement is the only direct evidence of what occurred at the time of the killing, the trier of fact is not required to believe the defendant's version of what transpired even if it is the only account given," citing *People v. Liddell* (1975), 32 Ill. App. 3d 828, 336 N.E.2d 815. But the court in *Lester* then went on to state:

> "In weighing the defendant's version of an incident, the trier of fact should consider the probability or improbability of the defendant's account, the circumstances surrounding the killing and the relevant testimony of other witnesses. [Citations.] There need not be actual rebuttal of the defendant's statements, but only a sufficient showing of circumstances from which defendant's guilt might be concluded by probable deduction. *Liddell*, 32 Ill. App. 3d 828, 830, 336 N.E.2d 815, 817." 102 Ill. App. 3d 761, 766.

The court then noted evidence which tended to contradict the defendant's claim of self-defense and thus supported his conviction of voluntary manslaughter. That evidence included the defendant's conflicting accounts of the incident and his flight from the scene. In *Liddell*, the court had reversed the defendant's voluntary manslaughter conviction because it found that the defendant's claim of self-defense, the only version of the incident presented at trial, was neither improbable nor contradicted by other evidence. In so holding, however, the court noted that a defendant's version of an occurrence need not be believed even though it is the only one presented where other facts and circumstances in the record tend to contradict that version or render it highly improbable. *People v. Schaefer* (1980), 87 Ill. App. 3d 192, 194, 409 N.E.2d 129, 131, does contain the statement that "A jury is not compelled to accept a defendant's exculpatory statement as true

even in the absence of directly contradicting evidence by other witnesses." But in *Schaefer* the court also pointed to other facts in evidence which tended to greatly damage the defendant's credibility and it affirmed the defendant's convictions on that basis despite his contention that no witness had contradicted his exculpatory testimony. Furthermore in the case cited by *Schaefer* as authority for the broad proposition we have quoted, *People v. Bell* (1977), 49 Ill. App. 3d 140, 363 N.E.2d 1202, the defendant's convictions were affirmed on the basis of testimony and circumstances which the appellate court found tended to contradict the defendant's exculpatory account.

*People v. Younge* (1980), 83 Ill. App. 3d 305, 309, 404 N.E.2d 415, 418, also contains *dictum* stating that the defendant's testimony, even if unrebutted, need not be believed by the trier of fact, citing *People v. Lahori* (1973), 13 Ill. App. 3d 572, 577, 300 N.E.2d 761, 764. However, in *Younge* there was testimony which directly contradicted the defendant's testimony. *Lahori* also involved directly conflicting testimony but it too in *dictum* stated that a defendant's unrebutted testimony need not be believed, citing *People v. Wilkes* (1971), 2 Ill. App. 3d 626, 276 N.E.2d 761, and *People v. Herron* (1970), 125 Ill. App. 2d 18, 260 N.E.2d 428. However both those cases held that a trier of fact need not believe a defendant's statement even though not directly contradicted by other eyewitnesses where the statement is contradicted by facts and circumstances in evidence.

In summary, it appears that upon close scrutiny of this line of Illinois Appellate Court criminal cases, it too supports the Illinois Supreme Court's holding that absent certain exceptions already specified in this opinion, the unimpeached and uncontradicted testimony of a witness cannot be arbitrarily disregarded by a finder of fact.

We must therefore address the facts of the instant case to determine whether the trial judge was justified in disregarding the defendant's testimony. Under the standard set forth in *People ex rel. Brown*, the judge could not discount the defendant's testimony unless it was impeached, contradicted by positive testimony or by circumstances, or found to be inherently improbable. We find first that the defendant's testimony regarding the source of the money in her account was not contradicted by positive testimony or circumstances and was not impeached. The defendant was the only witness to testify and she clearly stated that she had no income other than public assistance and food stamps and that all of the money in her account came from public assistance payments. The plaintiff offered no testimony or other evidence to rebut the defendant's testimony. While the defendant at one point showed confusion over the amount of money she had

amassed in her account, this was a collateral issue that had nothing to do with the source of her funds. Her positive testimony regarding the source of her funds was never contradicted and she was never impeached on this matter.

We also find that the defendant's testimony was not inherently improbable. She testified that she had withheld rental payments "about *** five months" over the previous two years and that during three of those months she withheld $280 in rent from the plaintiff. Her bank ledger card reflects a corresponding $280 deposit into her account during each of the three months she represented that she had not paid her rent to the plaintiff. While there was no testimony directly concerning the defendant's initial deposit of $502.56, she testified that she had withheld her rent payments a total of five times in the previous two years and that only three of those occasions concerned her rental agreement with the plaintiff. It is conceivable that she withheld her rent from another landlord for two months or saved the money prior to opening her account, especially where the defendant testified that all of the funds deposited "in any bank" account over the past five years came from public assistance payments. The record also establishes, without contradiction, that the defendant's final deposit of $620 was only a partial redeposit of the $630 that was withdrawn the previous day.

██ █ Under Illinois law, a witness' testimony is inherently improbable if it is "contradictory of the laws of nature or universal human experience, so as to be incredible and beyond the limits of human belief, or if facts stated by the witness demonstrate the falsity of the testimony ***." (*Kelly v. Jones* (1919), 290 Ill. 375, 378, 125 N.E. 334, 335; accord, *Mannen v. Norris* (1930), 338 Ill. 322, 170 N.E. 273.) In the instant case, we do not think that this standard for inherent improbability was demonstrated, and we believe that the trial judge improperly disregarded the defendant's uncontradicted testimony. The plaintiff argues in part that it would be inherently improbable that a family of four could live on $88 per month and $168 in food stamps after paying $280 per month into a bank account each month. However, the plaintiff fails to mention that the defendant and her three children survived on the same amount of money each month when the $280 was paid in rent rather than being deposited in the bank. While it may be inconceivable to some that a public assistance recipient could survive on his public assistance grant, thousands of people throughout Illinois manage every year despite the seeming inadequacy of the amount received. (See generally *Estep v. Department*

*of Public Aid* (1983), 115 Ill. App. 3d 644, 450 N.E.2d 1281.) We therefore do not think that the defendant's testimony was "contradictory of the laws of nature or universal human experience, so as to be incredible and beyond the limits of human belief ***." Consequently, we think that the trial court acted improperly when it disregarded the defendant's uncontradicted testimony.

For the foregoing reasons, we reverse the trial court's denial of the defendant's motion to quash garnishment.

ROMITI, P.J., and JOHNSON, J., concur.