384 A.2d 610.

STATE *v.* A. CAPUANO BROS., INC.

STATE *v.* FRANK GAGLIONE *et ux.*

APRIL 14, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

KELLEHER, J.   This is a consolidated enforcement action brought by the State of Rhode Island seeking injunctive and mandatory relief together with a civil penalty against two landowners for alleged violations of the Fresh Water Wetlands Act (the Act), P.L. 1971, ch. 213,[1] originally codified as G.L. 1956 §§2-1-18 – 2-1-24. The complaint in each case alleges that certain fresh water wetlands owned by each of the defendants in the city of Cranston had been altered without the approval of the Director of the Department of Natural Resources[2] as required by G.L. 1956, §2-1-21 (P.L. 1971, ch. 213). Each action sought an injunction halting further filling without a permit, a mandatory injunction requiring the landowner to restore the altered wetland to its condition prior to alteration, and a civil penalty. Responsive pleadings were filed, and thereafter, as the cases involved alterations of contiguous wetlands near Meshanticut Brook in Cranston, the actions were consolidated for trial.[3]

---

[1]Since its enactment in 1971, the Act has been amended three times. Public Laws 1974, ch. 197; P.L. 1976, ch. 89; P.L. 1977, ch. 116. As the alleged violations occurred prior to these amendments, the parties have stipulated that the 1971 version of the Act should apply. See J.M. Mills, Inc. v. Murphy, 116 R.I. 54, 352 A.2d 661 (1976).

[2]The duties and functions of the Department of Natural Resources have now been transferred to the newly created Department of Environmental Management. General Laws 1956 (1977 Reenactment) §42-17.1-3, as amended by P.L. 1977, ch. 182, §2.

[3]The two parcels lie south of Highland Street, Cranston, north of Interstate Highway 295, and west of Meshanticut Brook. According to defendant Gaglione, the defendants do not know the precise location of the boundary between the two parcels. Following the lead of the trial court, we shall refer to both parcels as the "subject property."

At trial the evidence indicated the defendant Gaglione filed an application with the Department of Natural Resources (the department) to alter certain wetlands in December 1972. Bruce Goodwin, a biologist from the department, inspected the site and concluded the Act was not applicable to the proposal. The department advised Mr. Gaglione that no permit was required "provided that no extension of existing fill (as of 12/20/72) is allowed in any direction." On October 2, 1973, Gaglione returned to the department and was informed that a formal application would be required to extend the fill.[4] A few weeks later Goodwin returned to the Gaglione property and found that a considerable amount of fill had been placed on the wetland. Gaglione was ordered by certified letter to cease filling the wetlands and to restore the wetlands which had been altered without a permit. Gaglione returned to the department in November 1973 and stated that the fill was inadvertent and promised to file an application for a permit.

In the months which followed, Goodwin and a department engineer, Peter Janaros, made numerous trips to the subject property and observed considerable extension of the fill. At one point a department conservation officer observed a dump truck and bulldozer depositing fill on the wetland area.[5] Numerous photographs which showed the extension of the fill were taken and introduced into evidence. When Mr. Gaglione failed to heed the November 5, 1973, notice which informed him of his encroachment and asked him to restore the wetlands, this litigation was begun in March 1974.

In regard to the Capuano property, a somewhat similar

---

[4]Gaglione did not file an application until January 25, 1974. The application was inadequate and incomplete for a number of reasons and thus was returned to him. He never returned with a completed application.

[5]A Cranston building contractor placed much of the fill on the subject property at the request of Messrs. Gaglione and Capuano. He estimated that he placed 30,000 cubic yards of fill on the subject property.

progression of events transpired. In July 1973 Goodwin inspected the property upon receiving a complaint from the Cranston Police Department that fill was being placed near Meshanticut Brook. He concluded that the Capupano property was in fact a wetland and that filling without a permit from the department had occurred. The director of the department sent a certified letter to Mr. Capuano, dated August 10, 1973, stating that filling without a permit violated the Act and warning that further filling must not take place before a permit was obtained. Capuano never filed an application for a permit with the department.

Upon receiving further complaints from the Audubon Society, the Providence Water Supply Board, and the Soil Conservation Service of the United States Department of Agriculture, department employees made numerous onsite inspections of the subject property throughout December 1973 and January 1974. Photographs were taken which showed the encroachment of the fill on the wetland. By certified letter dated December 13, 1973, the department ordered Capuano to cease filling immediately and to restore the wetland by January 25, 1974. When additional filling was confirmed by onsite inspections, the case was referred to the Attorney General. The Capuano litigation was initiated in February 1974. Both complaints were consolidated for trial.

After a trial on the merits, a justice of the Superior Court dismissed the complaints and held the Act to be unconstitutional "as it stands or in the application of the same." The trial justice set forth a twofold basis for his ruling: first, that the Act does not provide any notice to defendants that their land was a wetland, and, second, that the Act deprives them of any reasonable use of their property without just compensation. When drafting a judgment (which was signed and entered by a different Superior Court justice), defendants included a third ground for the decision: that the state failed to prove that the subject property is a wetland. A motion by the state to alter, amend, or vacate

the judgment was denied. On appeal the state has challenged all three grounds upon which the trial justice's conclusion rests.

## I.

In claiming that the trial justice erred when he found that the state had not proved that the subject property is a wetland under the Act, the state has a heavy burden. The findings of fact made by a trial justice are entitled to great weight and will not be disturbed by this court on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Taffinder* v. *Thomas*, 119 R.I. 545, 381 A.2d 519 (1977); *Rehab* v. *Lemenski*. 115 R.I. 576, 350 A.2d 397 (1976). However, we believe the state has met its burden in the instant case, for the positive, uncontroverted testimony of two witnesses identified the subject property as a wetland.

Martin Drobney, a hydrologic engineer with the Soil Conservation Service of the United States Department of Agriculture, testified that the subject property was a wetland, for it lay within the 50-year flood plain of Meshanticut Brook.[6] He testified at some length regarding how the 50-year flood plain was identified and what some of its characteristics are. Goodwin also identified both parcels as fresh water wetlands. As noted above, this evidence was not discredited either by other positive testimony or by circumstantial evidence, extrinsic or intrinsic.[7] Evidence of this character is ordinarily conclusive upon the trier of fact. *Laganiere* v. *Bonte Spinning Co.*, 103 R.I. 191, 194-95, 236 A.2d 256, 257-58 (1967). The trial justice could have

---

[6]Under the 1971 version of the Act, land adjacent to a river or stream which is, on the average, likely to be covered with flood waters once every 50 years is defined as a "flood plain." Flood plains are included within the definition of fresh water wetlands. General Laws 1956, §2-1-20, as enacted by P.L. 1971, ch. 213. The 1974 amendments expanded the definition of fresh water wetlands to encompass flood plains likely to be flooded once every 100 years. General Laws 1956 (1976 Reenactment) §2-1-20, as amended by P.L. 1974, ch. 197, §2.

[7]The defendant Capuano rested without submitting any evidence. The defendant Gaglione testified briefly on his own behalf.

rejected this evidence if, in his opinion, it contained inherent improbabilities or contradictions or otherwise was unworthy of belief, but the law requires him to specifically state the reasons which underlie his rejection. *Id.* His failure to do so leaves the positive, uncontradicted testimony conclusive upon him. We hold the trial justice was clearly wrong when he found that the state had failed to prove that the subject property is a wetland.

## II.

We need not long detain ourselves with the conclusion of the trial justice that the Act is unconstitutional because it does not provide any notice to defendants that their property is subject to the Act.[8] The record clearly indicates that the violations alleged in the complaint occurred *after* both defendants had received written notice by certified mail that each of their parcels was a wetland and was not to be filled. Since defendant Gaglione first applied to the department for permission to alter wetlands in December 1972, he must have been aware that his property was subject to the Wetlands Act. In any case, he was notified by letter dated December 27, 1972, that he was not to extend his existing fill in any direction without permission from the department.

Similarly, Mr. Capuano was notified as early as August 1973 that his property was a wetland and was not to be altered without permission from the department. The subsequent filling by each of the defendants in late 1973 and early 1974 could not have been done without notice of either the Act or the fact that their parcel was subject to its provisions.

The record also indicates that the department, even prior to the 1974 amendments to the Act, had undertaken to identify certain wetlands subject to the Act. Aerial photo-

---

[8]The 1974 amendments to the Act included a provision which authorizes the director to designate areas as wetlands areas and to maintain a map survey of the state indicating those areas. General Laws 1956 (1976 Reenactment) §2-1-20.2, as enacted by P.L. 1974, ch. 197, §1.

graphs of the state were taken by the Soil Conservation Service in the spring of 1972. Through a process of photo interpretation the department was able to identify these fresh water wetlands and mark them on the aerial photographs. Copies of these photographs were then placed in the local cities and towns. The photo of Cranston, a copy of which was on file in the Cranston City Hall, clearly identified the subject property as a flood plain and swamp as defined in the Act.

It is, of course, a fundamental principle of due process that the state may not hold an individual responsible for the conduct which he could not reasonably understand to be proscribed. *State* v. *Levitt,* 118 R.I. 32, 36, 371 A.2d 596, 598 (1977). But this is not such a case. Not only has the department undertaken to provide constructive notice to all landowners of the scope of Rhode Island's fresh water wetlands, but it gave actual notice to both defendants that the subject property was a wetland as defined by the Act.

### III.

Finally, we must address defendants' contention that the Act deprives them of all reasonable use of their property and thus deprives them of property without just compensation in violation of U.S. Const. Amend. XIV, §1, and R.I. Const. art. I, §§2, 16. The trial justice so held, relying upon *Commissioner of Natural Resources* v. *S. Volpe & Co.,* 349 Mass. 104, 206 N.E.2d 666 (1965), and *State* v. *Johnson,* 265 A.2d 711 (Me. 1970).

This is not the first occasion we have had to consider the constitutionality of the Fresh Water Wetlands Act. In *J.M. Mills, Inc.* v. *Murphy,* 116 R.I. 54, 352 A.2d 661 (1976), we sustained the constitutionality of the Act, as amended in 1974, against a due process attack. The 1974 amendments altered the Act in a number of respects, the most important for our purposes being the addition of subsection (b) to §2-1-21 (P.L. 1974, ch. 197, §2). That subsection creates a procedure whereby a landowner denied a permit can obtain

de novo review of essential questions of fact and law in the case and perhaps obtain either approval to proceed with his project or a limited form of compensation. As enacted in 1971, the Act did not provide for any compensation to aggrieved landowners. *See* p. 1, n.1, *infra.* The trial justice apparently felt the regulation of Rhode Island's wetlands could not constitutionally be effectuated without some provision for compensation for the wetland owners.[9]

We see no need to dwell at length on this particular constitutional issue, for defendants have failed to introduce any evidence supporting their contention that the Act would deprive them of all reasonable use of their property. This is not a case where the landowners complied with the Act, submitted an application for a permit to fill their wetlands, and then appealed the denial thereof. There is no evidence in the record indicating the department would have acted unfavorably had either defendant completed an application for a permit. Moreover, whether defendants have been deprived of "all beneficial use" of their lands, *Sundlun* v. *Zoning Board of Review,* 50 R.I. 108, 114, 145 A. 451, 454 (1929), is a mixed question of law and fact. The burden of proof was on defendants to demonstrate that the statute deprived them of all beneficial or economical use of their property, *Maple Leaf Investors, Inc.* v. *State,* 88 Wash. 2d at 734, 565 P.2d at 1166, and they have failed to sustain that burden.[10]

---

[9]A number of jurisdictions have upheld the constitutionality of wetlands regulation even in the absence of provisions calling for compensation. *See e.g. Sibson* v. *State.* 115 N.H. 124, 336 A.2d 239 (1975); *Just* v. *Marinette County,* 56 Wis. 2d 7, 201 N.W.2d 761 (1972); *Maple Leaf Investors, Inc.* v. *State,* 88 Wash. 2d 726, 565 P.2d 1162 (1977); *Turner* v. *County of Del Norte,* 24 Cal. App. 3d 311, 101 Cal. Rptr. 93 (1972). The theory most often advanced for this result is that prohibitions on the filling of wetlands do not constitute a taking of property for a public benefit, but are a valid exercise of the police power proscribing future activities which would be harmful to the public. *See Sibson* v. *State,* 115 N.H. at 130, 336 A.2d at 243; Kusler *Open Space Zoning: Valid Regulation or Invalid Taking;* 57 Minn. L. Rev. 1, 21-28 (1972).

[10]It may well be that even if a permit to fill the subject property was denied, the property would have a number of alternative economic uses, such as a game farm, fish hatchery, wildlife sanctuary, plant nursery, or other recreational, agricultural, or arboricultural uses.

In short, this is an enforcement action brought by the state to secure compliance by the defendants with the Fresh Water Wetlands Act. The defendants' constitutional challenge relating to a taking of their respective properties without the payment of due compensation fell far short of its mark. On this record the trial justice erred in dismissing the state's complaints.

The state's appeal is sustained, the judgment entered below dismissing the complaints is reversed, and both cases are remanded to the Superior Court for a new trial.

*Julius C. Michaelson*, Attorney General, *J. Peter Doherty*, Special Assistant Attorney General, for plaintiff.

*Anthony DiPetrillo, Paul Pisano*, for defendants.