[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case is before this Court on appeal from a Final Decision and Order issued by the Department of Environmental Management (DEM) against the plaintiff, Justin Parrillo, finding plaintiff had violated Rhode Island G.L. 1956 (1987 Reenactment) § 2-1-21(a). Plaintiff now appeals from that part of the Order requiring plaintiff to restore the freshwater wetlands to their state as of July 16, 1971 and to pay an administrative penalty in the amount of one thousand ($1,000) dollars. Jurisdiction is pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS/TRAVEL
Plaintiff is the owner of a parcel of land identified as Tax Assessor's Plat 18, Lots 222 and 223. This property is located on Brookdale Street in Cranston and abuts the Meshanicut Brook. Plaintiff purchased this land in 1985 with the intent of constructing a single family dwelling on the parcel. Tr. at 56-57. As a contractor, plaintiff is in the business of purchasing property, constructing houses on the land and then selling the house and using the proceeds to repeat the process.Id.
With regard to the land on Brookdale Street, plaintiff hired Nicholes Veltri, an engineer and land surveyor to oversee the maze of permits and approvals necessary for construction of the house. Id. at 57. Under Mr. Veltri's guidance, plaintiff submitted an Individual Sewage Disposal System (ISDS) application with DEM. This application was approved by the ISDS Division on November 25, 1986. Jt. Exhibit 8. Thereafter, plaintiff filed a Preliminary Determination Application with DEM's Division of Groundwater and Freshwater Wetland (Division) requesting a freshwater wetland determination for the property on Brookdale Street. See, Prehearing Conference Record, November 21, 1991, p. 4. In August, 1987, after review of plaintiff's application materials and an on-site inspection, the Division notified plaintiff by letter sent first class mail that his proposal constituted a significant alteration to a freshwater wetland and therefore a formal application for approval from the Director was necessary prior to any alteration of the wetland. Id.
Due to personal problems in 1987, plaintiff temporarily abandoned efforts to construct the house on Brookdale Street. Tr. at 66. However, in the beginning of 1989 plaintiff renewed his efforts to construct the house. In February, 1989, plaintiff obtained approval for a new ISDS Permit as well as a Building Permit from the City of Cranston. Tr. at 67. Plaintiff then began construction of the house without filing the required application with the Wetlands Division.
Thereafter, in August 1989 DEM's Division of Groundwater and Freshwater Wetland inspected the site and issued a Notice of Violation and Order (NOVAO) to plaintiff. Jt. Exhibit 23. The NOVAO alleged that plaintiff was in violation of § 2-1-21(a) of Rhode Island General Laws by altering a freshwater wetland without the approval of the Director of DEM. Id. In particular, plaintiff was alleged to have altered the wetland by constructing a foundation, filling, clearing vegetation, granting and creating soil disturbance within a 100 year flood plain and within a two hundred (200') foot riverbank wetland. Id. The NOVAO order plaintiff to: 1) cease and desist immediately from any further alteration of the subject freshwater wetlands; 2) restore the wetlands to their state as of July 16, 1971 insofar as possible; 3) contact the Department prior to initiating any restoration in order to obtain proper supervision from the Department; and 4) pay an administrative penalty of one thousand ($1,000) dollars.Id. Plaintiff duly filed a request for an adjudicatory hearing to contest the NOVAO.
Prior to the adjudicatory hearing a Prehearing Conference was held during which plaintiff stipulated to the fact that he "engaged in foundation construction, filling, vegetation clearing, grading and creating soil disturbance, within a riverbank wetland, that area of land within 200 feet of a flowing body of water greater than 10 feet wide (Meshanicut Brook)." Prehearing Conference Record, November 21, 1991, p. 5. Plaintiff also admitted that he "did not file a formal permit application relating to the alteration of freshwater wetlands with the Department." Id. Based on these stipulations the hearing officer granted DEM's Motion for Partial Summary Judgment on the issue of plaintiff's liability for altering the freshwater wetlands without the Director's approval. Decision and Order on Division's Motion for Partial Summary Judgment, March 17, 1992. An adjudicatory hearing was thereafter held on April 20, 1992 to address the issues concerning plaintiff's restoration of the land and the administrative penalty.
On appeal, plaintiff does not contest the hearing officer's grant of Summary Judgment which found that plaintiff violated §2-1-21. Rather, plaintiff is challenging the remedy imposed by the Director ordering full restoration of the property and an administrative penalty of one thousand ($1,000) dollars. More specifically, plaintiff argues that the Director's Order requiring restoration of the wetland deprives plaintiff of all reasonable use of his property and constitutes an undue hardship. Alternatively plaintiff argues that enforcement of the order would constitute an unlawful taking. Plaintiff also argues that the exclusion of proposed evidence by the Hearing Officer resulted in an erroneous decision with regard to the determination of the administrative penalty. Finally, plaintiff asserts that the cumulative procedures employed by the Division, in conjunction with the City of Cranston's actions, amounted to a deprivation of plaintiff's due process rights.
STANDARD OF REVIEW
This Court is granted jurisdiction to review decisions of the Department of Environmental Management pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15. This statute also mandates the scope of review permitted by this Court. More specifically, section 42-35-15(g) provides:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Fundamental in this statute is the mandate that this Court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence.Costa v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest, 509 A.2d 453, 458 (R.I. 1986). Rather, this Court must confine itself to review of the record to determine if "legally competent evidence" exists to support the agency decision. Turner v. Department of EmploymentSecurity, 479 A.2d 740, 742 (R.I. 1984). Thus, the court will reverse factual conclusions of administrative agencies only when they are "completely bereft of competent evidentiary support in the record." Sartor v. Coastal Resources Mangt. Council,542 A.2d 1077, (R.I. 1988). However, questions of law decided by Administrative Agencies are not binding on the court. Narr. WireCo. v. Norberg, 376 A.2d 1, 118 R.I. 596 (1977). Therefore, this Court "may review questions of law to determine what the law is and its applicability to the facts." Chenot v. Bordeleau,561 A.2d 891, 893 (R.I. 1989); Carmody, 509 A.2d at 458.
DISCUSSION
In the instant action, the Director of DEM, pursuant to authority granted to her under the Wetland Act (§ 2-1-18 et. seq.), ordered plaintiff to restore the wetlands altered by him and to pay a penalty. The ultimate purpose of the Wetlands Act is to protect the wetlands "from random, unnecessary, and/or undesirable drainage, excavation, filling, encroachment or any other form of disturbance or destruction." G.L. 1956 (1987 Reenactment) § 2-1-18; see also, Wood v. Davis,488 A.2d 1221, 1224 (R.I. 1985). This purpose is achieved in part by requiring approval by the Director of DEM prior to the alteration of any fresh water wetland. See, § 2-1-21(a). The Act also provides the Director with enforcement power by granting the Director the authority "to order complete restoration of the freshwater wetland area . . . [and to assess] a fine of up to one thousand dollars." § 2-1-23; see also, § 42-17.6-2. The Director, therefore, has the statutory authority to order full restoration of the wetland as well as the power to assess an administrative penalty.
On appeal, however, plaintiff first argues that the order directing him to restore the altered wetland deprives him of all reasonable use of his property and thus constitutes an undue hardship. In support of this argument, plaintiff cites a number of ISDS and zoning appeal cases. In reviewing the cases cited by plaintiff, however, this Court notes that the "undue hardship" standard used in those cases and relied on by plaintiff in the instant action is taken from the Rules and RegulationsEstablishing Minimum Standards Relating to Location, Design,Construction and Maintenance of Individual Sewage DisposalSystems (ISDS), SD 21.02 and from that section of the General Laws allowing variances from the zoning regulations. See, G.L. 1956 (1990 Reenactment) § 45-24-19(c). After careful review of the Rules and Regulations Governing the Enforcement of the FreshWater Wetlands Act, (Rules and Regulations) as well as the Wetlands Act itself this Court fails to find any provision in these sections for a variance based upon a claim of undue hardship. Rather, the Rules and Regulations quite specifically delineate the review criteria for granting a permit for alteration of a fresh water wetland. See, Rules andRegulations, §§ 4.02; 5.03; 7.02-7.06. There is no provision within this standard requiring the Director to look at the undue hardship suffered by the landowners. The Rules and Regulations
also do not provide any variance procedure that would relieve the landowner from complying with the Rules and Regulations because of a claim of undue hardship. Therefore, there is no merit to plaintiff's argument that DEM's order denies plaintiff of all reasonable use of his property and constitutes an undue hardship.
Plaintiff also argues that the Director's order requiring restoration of the wetland amounts to a taking without just compensation. In support of this argument plaintiff citesAnnicelli v. Town of South Kingstown, 463 A.2d 133 (R.I. 1983). In Annicelli the Supreme Court ruled that "environmental legislation may constitute a taking when all beneficial use of the property is denied." Id. at 141. The burden of proving that a statute deprives an individual of all beneficial use of their property is upon the party challenging the statute. State v. A.Capuano Bros., Inc., 384 A.2d 610, 615, 120 R.I. 58 (1978) (citing Maple Leaf Investors, Inc. v. State, 88 Wn.2d at 734, 565 P.2d at 1166).
In State v. A. Capuano Bros., Inc., the Supreme Court addressed the issue of whether the Wetlands Act deprived a landowner of property without just compensation. The defendants in Capuano Bros., like the plaintiff in the instant action, failed to file an application seeking approval of the Director prior to alteration of the freshwater wetland. Upon discovery of the unauthorized alteration, the State brought an enforcement action seeking an injunction halting further alterations without a permit, a mandatory injunction requiring the landowner to restore the altered property to its prior condition, and a civil penalty. Id. at 611. In addressing defendant's argument that the Wetland Act deprives them of property without just compensation, the Capuano court found that defendants had failed to introduce any evidence to support their position. The court went on to note that "[t]his is not a case where the landowners complied with the Act, submitted an application for a permit . . . and then appealed the denial thereof. There is no evidence in the record indicating the department would have acted unfavorably had . . . Defendant completed an application for a permit." Id. at 615.
Likewise, the record in the instant action is similarly devoid of any evidence demonstrating that the Director would deny plaintiff a permit should he apply for one. If the plaintiff does make the proper application and is denied approval, then §2-1-21(b) provides the mechanism for plaintiff to petition this Court for compensation for the taking. However, prior to any action by DEM denying plaintiff approval for alteration of the land, there is no "taking."
Therefore, plaintiff has failed to meet its burden of establishing that DEM's action constituted an unlawful taking. In addition to the fact that the Director has yet to deny plaintiff a permit, plaintiff has failed to provide any evidence indicating that DEM's action "practically or substantially renders the land useless for all reasonable purposes." Annicelli, 463 A.2d at 139. Plaintiff has failed to provide any evidence demonstrating that he has been denied all beneficial use of his property; therefore his takings argument must fail as well.
Plaintiff also argues that the hearing officer erroneously excluded evidence relevant to the determination of the administrative penalty. In particular, plaintiff sought to elicit testimony with regard to plaintiff's personal problems during 1987 and evidence relating to the location of the neighboring homes. In support of his argument, plaintiff directs this Court's attention to G.L. § 42-17.6-6, which provides:
 42-17.6-6. Determination of administrative penalty. — In determining the amount of each administrative penalty, the director shall include, but not be limited to, the following to the extent practicable in his or her considerations:
 (a) The actual and potential impact on public health, safety and welfare and the environment of the failure comply; (b) The actual and potential damages suffered, and actual or potential costs incurred, by the director, or by any other person . . . (g) The financial condition of the person being assessed the administrative penalty; . . . (i) Whether the failure to comply was intentional, willful or knowing, and not the result of error; . . . (k) Any other factor(s) that may be relevant in determining the amount of a penalty, provided that the other factors shall be set forth in the written notice of assessment of the penalty;
The Superior Court Rules of Evidence apply to administrative hearings. G.L. 1956 (1988 Reenactment) § 42-35-10(a); DePasqualev. Harrington, 599 A.2d 314 (R.I. 1991). Therefore, "irrelevant, immaterial, or unduly repetitions evidence shall be excluded." §42-35-10(a). The exclusion of evidence is within the sound discretion of the trial judge and the exclusion of such will not be a basis for reversal unless the trial justice abused his discretion thus causing plaintiff to suffer substantial injury.State v. Mora, Jan. 11, 1993; Kelaghan v. Roberts,433 A.2d 226, 232 (R.I. 1981). Substantial injury will be found only if "the evidence excluded was relevant and material to a crucial issue and that evidence, if admitted, would have had a probable influence on the . . . verdict or a controlling influence on a material aspect of the case." Kelaghan, 433 A.2d at 232.
In the instant action, this Court finds that the hearing officer did not abuse his discretion in excluding the proffered evidence concerning the location of the neighboring homes. Even were this Court to assume arguendo that the proffered evidence is relevant, it does not have a "controlling influence" on the hearing officer's decision. In review of the record, this Court finds ample evidence to support the assessment of a $1,000 penalty. For example, Harold Ellis, Enforcement Supervisor of the Wetlands Division, testified that in addition to considering the fact that the alteration occurred on a 100 year flood plain, the Division also considered: "the actual area of wetland altered, which was 10,500 square feet; . . . how much of the 200 foot riverbank wetland was altered; where it occurred within the riverbank; . . . the type of alteration; . . . were there structures actually built in the area; . . . the type of vegetation that were affected and . . . the water quality class of the river." Tr. at 40. While the location of the neighboring homes may arguably be relevant to "the actual and potential impact on public health, safety and welfare" as well as "the actual and potential damages suffered," (See, § 42-17.6-6(a), (b)), this evidence does not rise to the level of having a "controlling influence" on such determinations given the overwhelming evidence presented to support the fine.
As to plaintiff's personal problems during 1987, this Court finds that the hearing officer correctly excluded such evidence as irrelevant. Plaintiff was alleged to have violated § 2-1-21(a) in 1989; therefore his problems during 1987 are totally irrelevant as to the legal issue of whether his failure to comply in 1989 was "intentional, willful or knowing." § 42-17.6-6(i).
Plaintiff's final contention is that the cumulative procedures employed by the Division in conjunction with the City of Cranston's actions amounts to a denial of plaintiff's due process rights under the Fourteenth Amendment. More precisely, plaintiff claims that his private interests of property and livelihood were affected by the granting of the ISDS permit by DEM and the building permit by the City of Cranston.
The resolution of whether an agency's administrative procedure comports with due process requires a balance of the relevant private and governmental interests. Vito v. DEM,589 A.2d 809, 813 (R.I. 1991). This analysis requires consideration of three factors: "(1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the possible value, if any, of additional or substitute procedure safeguards, and (3) the governments' interest." John J. Orr Sons, Inc. v. Waite,479 A.2d 721, 723 (R.I. 1984) (citing Matthews v. Eldridge,424 U.S. 319, 335 (1976)).
In applying these factors to the instant action, this Court must look at plaintiff's property interest in the partially constructed house as well as DEM's interest in protecting Rhode Island's freshwater wetlands through enforcement of the Wetlands Act. In balancing these two factors this Court finds that the government has a strong interest in enforcing the Wetlands Act in order to protect the State's wetlands. This governmental interest outweighs the plaintiff's property interest in the partially constructed house.
With regard to the risk of erroneous deprivation through the procedure used by the agency, this Court can find little value to any additional division procedures. Upon determination that plaintiff's proposed actions constituted a significant alteration to a fresh water wetland, the Division notified the ISDS Division, the City of Cranston as well as the plaintiff that plaintiff needed to file a formal application prior to any alteration of the land. Tr. at 18 and 28. In addition, the ISDS Rules and Regulations specifically notify plaintiff that "it shall be the applicant's responsibility to make an application for, and obtain a permit to alter wetlands from the fresh water wetlands section." SD 2.16(d) of the ISDS Rules and Regulations. Therefore, plaintiff's claim to suffering a "false impression" is undermined by his actual knowledge of the need for a permit. Accordingly, this Court finds plaintiff's argument that the erroneous issuance of the ISDS and building permits violated plaintiff's due process rights by creating a "false impression" that he had all necessary permits to be without merit.
In conclusion, while this Court recognizes that removing a partially built house is an ultraistic remedy, plaintiff/builder himself created the need for such a remedy by commencing construction of the house without the statutorily required permit. DEM, meanwhile, pursuant to its statutory authority, ordered this remedy. See, § 2-1-23. Were an individual such as the plaintiff allowed to circumvent the Wetlands Act by ignoring and/or forgetting to obtain approval prior to alteration of the wetland, then the Wetlands Act would be unfairly applied discriminately with respect to applicants thus endangering the state's program for preserving its wetlands pursuant to § 2-1-18et. seq.
Accordingly, for the reasons stated herein, plaintiff's appeal is denied and the Department of Environmental Management's decision is affirmed.
Counsel shall submit the appropriate order for entry.