[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This civil action is a claim of judicial review pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15 of a Final Decision and Order of the Director of the Department of Environmental Management (hereinafter "the Director"), filed on February 25, 1993. This action was filed in this Court on March 29, 1993. The record of proceedings in the Department of Environmental Management (hereinafter "the Department") was certified to this Court on April 26, 1993. Briefing was concluded on August 24, 1993. The case was referred to this justice for decision on September 8, 1993.
The plaintiff purchased a 30 acre tract of land on Jenks Road in the Town of Foster in 1983. On August 19, 1988 Mr. Bruce Lang, a Department biologist, inspected the plaintiff's land and noted that he had built a driveway and a bridge in and over wetlands under the jurisdiction of the Department. He recommended an NOV (Notice of Violation) and removal of all fill materials within the wetlands. Accordingly, on September 9, 1988, the Department issued a Notice of Violation and Order alleging that the plaintiff had altered freshwater wetlands, assessing penalties amounting to $1,850.00, and ordering him to cease and desist from any further alteration of the wetlands and to restore those wetlands to their state as of May 9, 1974. The plaintiff promptly claimed an administrative appeal on September 20, 1988.
On September 22, 1988 the plaintiff conferred with Mr. Dean Albro, who was then generally in charge of administering the freshwater wetlands program in the Department, and who appeared and testified in that capacity at the administrative hearing. At that meeting the plaintiff and Mr. Albro discussed a consent agreement to resolve the Order issued on September 9, 1988. Thirty months later, in April, 1991, a proposed consent agreement was transmitted to the plaintiff. The agreement was unacceptable to the plaintiff because the Department's officers persisted in their requirement that he remove the driveway and bridge to which he did not agree.
The plaintiff's administrative appeal came to be heard by a Department Hearing Officer fourteen more months later on June 15, 1992. The plaintiff never disputed that he had altered freshwater wetlands in violation of the pertinent statutes. The Hearing Officer's conclusion that the plaintiff had violated G.L. 1956 (1987 Reenactment) § 2-1-21(a) was foregone. The plaintiff does not contest the Director's affirmance of that conclusion in this appeal. Nor does the plaintiff press any contention that the penalties assessed were excessive. Nor is any issue raised that the order to cease and desist from any further alteration of the wetlands is improper.
The Hearing Officer concluded that the Department failed to meet its burden of showing by a preponderance of the evidence that the restoration order in the Notice of Violation issued on September 9, 1988 should be affirmed. As a result, she did not order the plaintiff to restore the wetlands to a prior condition. On her review of the Hearing Officer's Decision and Order the Director rejected the conclusion that the Department had any burden of proof with respect to the restoration order. She also declined to adopt two of the Hearing Officer's proposed findings of fact. Consequently, in her Final Decision and Order she sustained the Notice of Violation and Order issued on September 9, 1988, and specifically ordered the plaintiff to restore the freshwater wetlands to their state as of July 16, 1971. From that portion of the Final Decision and Order the plaintiff appeals to this Court.
In order to clarify the issues raised by this appeal the facts as found by the Hearing Officer and as adopted by the Director must be summarized. During the period between 1983 and 1988 the plaintiff altered wetlands on his Foster property by: (1) "vegetative clearing and deposition of fill material directly into approximately 2910 square feet of wooded swamp;" (2) "placement of fill material into the zone A 100-year flood plain of an unnamed perennial river;" (3) "vegetative clearing and filling within [a] 50 feet of a wooded swamp;" and (4) "vegetative clearing and filling on a 100-foot riverbank wetlands." This vegetative clearing and the filling was in connection with a driveway 200 by 15 feet. He also built a wooded timber bridge 13 by 6 feet made from 10 inch square oak beams within the jurisdictional wetlands. He also dry-laid a stone wall 2 feet by 3 feet high on each side of the wooden timber bridge. All of this construction work was done by hand by the plaintiff using a wheelbarrow and a pick-up truck.
The plaintiff's property is a registered tree farm maintained under a forest management plan designed by the Department's Division of Forest Environment. The plaintiff uses the property as a nature refuge, on which he has planted trees and shrubs, reclaimed a dump and created a wildlife refuge. He intends to donate the land to the Foster Land Trust.
The Director did not affirm the following "Findings of Fact" in the Hearing Officer's Decision:
"38. That each case must be viewed according (to) a case-by-case basis.
"39. That DEM ordered restoration without reviewing the particular circumstances of this violation."
These two "findings" are actually rulings of law as is their rejection by the Director. The Director's rulings of law are, of course, subject to review by this Court. Chenot v. Bordeleau,561 A.2d 891 (R.I. 1989) The Director also ruled that the Hearing Officer erred in her Conclusion of Law in paragraph 8:
"That the State has failed to meet its burden of showing by a preponderance of the evidence that the restoration order in NOV C-2621 issued on September 9, 1988 should be affirmed."
The Director held that once it was established that a violation of § 2-1-21(a) had occurred the Department was entitled to a restoration order. There can be no question that the plain language of the statute authorizes such an order, State v.Distante, 455 A.2d 305 (R.I. 1983), and the constitutionality of the statutory provision has been upheld. State v. A. CapuanoBros., Inc., 120 R.I. 58, 384 A.2d 610 (1978). The question in this case is not whether or not the Director has the power to order restoration. Of that there is no question. Of course, she has. The question is rather, whether she should exercise that power in this case. By use of the linguistic hybrid "and/or" in §2-1-24(a) the General Assembly has plainly made an order of restoration discretionary and not mandatory.
There is persuasive authority from the Federal Courts that administrative agencies must fashion remedies on a case-by-case basis. ". . . the breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily not to the issue of ascertaining whether conduct violates the statute, or regulations, but rather to the fashioning of policies, remedies and sanctions, including enforcement and voluntary compliance programs in order to arrive at maximum effectuation of Congressional objectives." Niagara Mohawk Power Corp. v. FederalPower Commission, 379 F.2d 153, 159 (D.C. Cir. 1967). "Discretion is particularly broad when an agency is concerned with fashioning remedies and setting enforcement policy."Greater Boston Television Corporation v. Federal CommunicationsCommission, 444 F.2d 841, 857 (D.C. Cir. 1971), cert. den.403 U.S. 923, 91 S.Ct. 2229, 2233, 29 L.Ed.2d 701 (1971).
Discretion is always exercised on a case-by-case basis. The Hearing Officer was correct when she held that the Department was required to consider the particular facts of each case in deciding whether the case is an appropriate one for the imposition of an order of complete restoration. The Department plainly has the power to order total restoration, partial restoration, or no restoration at all, as the particular facts of each case warrant. In this case, however, there is no evidence whatever that anyone in the Department, except the Hearing Officer, gave any consideration at all to the clear and convincing evidence produced by the plaintiff in mitigation and extenuation of his violation.
Without weighing any of the pros and cons for and against complete restoration as opposed to partial restoration or modification of the alteration the Director has ordered complete restoration. Complete restoration means that the plaintiff must destroy years of handiwork which may or may not be adversely impacting the wetlands environment. This order was issued notwithstanding that other violators of this same wetland have been permitted to modify but not entirely remove their alterations, according to the testimony of Mr. Albro at the hearing. Transcript, June 15, 1992, pp. 32-33.
The Director correctly ruled as a matter of law that neither the statute, nor the regulations impose any evidentiary burden on the Department to justify an order of restoration. She rationalized her exercise of discretion in this case by observing that, if this plaintiff were not required to restore the freshwater wetlands he had altered in violation of the law, he would be thereby allowed to "reap the benefits" of his unlawful acts. That principle is long-established and well-recognized both in the common law and in equity. A wrongdoer should indeed never be allowed to benefit from her wrongdoing. The Director is also undoubtedly right to be concerned that, if the Department shows any flexibility at all in enforcing this statute, it could be swamped with pleas for leniency, which might take more time for consideration than they are worth.
Neither the Department nor the Director was moved to show any leniency to this plaintiff by the environmental sensitivity he displayed, as noted by Mr. Bruce Lang, the Department's biologist, in his report of his inspection on August 19, 1988.See also, Findings of Fact numbered 23, 24, 25, 26, 27, 29, 30, and 31, as adopted by the Director. It should be fairly rare for such an obvious natural conservationist to be cited for a wetlands violation. The plaintiff plainly intends no economic development of this land, according to his uncontradicted testimony and that of Mr. Robert Boyden, President of the Foster Land Trust. Transcript, June 15, 1992, pp. 71-80. See alsoFinding of Fact numbered 28, as adopted by the Director. Once again, it does not appear likely that a violator will ever stand to benefit personally so little from his violation as this plaintiff, while the public might have so much to gain.
The Hearing Officer, on the other hand, did weigh the conflicting interests at stake and did resolve that it would be inequitable to force the plaintiff to restore the wetlands. She ordered, instead, that the plaintiff apply for an "after-the-fact" permission to alter the wetlands, which would be given expedited consideration by the Department. The Director points out correctly that pertinent regulations prohibit the processing of such an application while a Notice of Violation remains unresolved by a consent agreement. She also concluded that the relief proposed by the Hearing Officer could lead to wholesale circumvention of the enforcement provisions of the wetlands law. These concerns of the Director's are forceful and cannot be lightly disregarded. Nevertheless, they give no weight to the virtually unique circumstances of this case nor to the Director's power to tailor remedies to the harm shown by the violation.
There is reputable authority for the proposition that administrative orders may be tempered by equitable considerations.
 "The principles of equity are not to be isolated as a special province of the courts. They are rather to be welcomed as reflecting fundamental principles of justice that properly enlighten administrative agencies under law. The courts may not rightly treat administrative agencies as alien intruders poaching on the court's private preserves of justice. Courts and agencies properly take cognizance of one another as sharing responsibility for achieving the necessities of control in an increasingly complex society without sacrifice of fundamental principles of fairness and justice." (Emphasis supplied.)
 Niagara Mohawk Power Corporation v. Federal Power Commission, supra, at 160.
The Supreme Court has held that discretion is not exercised by merely granting or denying a party's request. "The term `discretion' imports action taken in the light of reason as applied to all the facts and with a view to the rights of all
the parties to the action while having regard for what is rightand equitable under the circumstances and the law." (Emphasis supplied.) Hartman v. Carter, 121 R.I. 1, 4-5, 393 A.2d 1102, 1105 (1978).
The Director was clearly wrong as a matter of law when she decided that she was not required to consider the particular facts of this case in fashioning an appropriate remedy. Ordinarily, the Court would remand this case to the Director for re-consideration with a corrected view of the applicable law. The primary and exclusive authority and responsibility in this State for the maintenance of freshwater wetlands is vested in the Director. In such a difficult task her views ought not be lightly displaced. In this case, however, the time has come to cry: Enough! This appeal originated over five years ago. Cf.,Sakonnet Rogers, Inc. v. Coastal Resources Management Council,536 A.2d 893 (R.I. 1988).
The Final Decision and Order of the Director entered on February 25, 1993 is reversed and vacated. The Decision and Order of the Hearing Officer entered on February 8, 1993 is affirmed and reinstated as the Final Decision and Order, except that paragraph 2 thereof is modified to read as follows:
"2. That the property owner is allowed to file a wetland permit application with the Division of Freshwater Wetlands forthwith."
The plaintiff will present a form of judgment for entry upon notice to the defendant.