[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
These are two consolidated appeals from decisions made by the Department of Environmental Management ("DEM") concerning the construction of a gas pipeline by the Tennessee Gas Pipeline Co., Inc. ("TGP") Jurisdiction in this Court is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15 and G.L. 1956 (1987 Reenactment) §2-1-18 et seq.
FACTS/TRAVEL
On March 22, 1990, Tennessee Gas Pipeline Co., Inc. filed an application to alter wetlands with the Department of Environmental Management in conjunction with its project to construct a natural gas pipeline between Burrillville and Cranston. Tr. at 22. The application, and the plans submitted with the application, went through the public notice and comment procedure from September 27, 1990 to November 11, 1990, as required by G.L. 1956 (1987 Reenactment) § 2-1-18 et seq. Tr. at 24. Objections to the application were filed by the City of Cranston and the Towns of North Smithfield and Smithfield pursuant to G.L. 1956 (1987 Reenactment) § 2-1-22. Because of these objections, DEM denied TGP's application on December 28, 1990. Tr. at 28.
TGP filed for a hearing on the denial of their original application, but that hearing never took place because, as a result of settlement negotiations during which a revised plan was submitted by TGP, DEM approved TGP's application. Tr. at 36. On August 27, 1991, a permit for wetland alterations was issued based on the revised plans. Id. The revised plans never went through the public notice procedure because they did not show any new wetland alterations. Tr. at 33. The modified plans showed the pipeline ending at Natick Road in Cranston. Tr. at 30. This termination point was different from the original plans in which the pipeline proceeded on from Natick Road through Plaintiff Moreau's property. Id. Providence Gas Company would receive its gas deliveries from a meter station at the revised end of the pipeline at Natick Road. After the plans were revised, the municipalities also withdrew their disapprovals. The issuance of this permit was appealed by Plaintiff.
Construction of the pipeline began in September, 1991 in accordance with the permit and its specifications as to how to treat the affected wetlands depicted on the revised plans submitted in support of TGP's application. Tr. at 107. Some time after construction of the pipeline began, TGP noticed that a wetland ("Wetland 70") not depicted on the revised plans was being altered by the construction. It is disputed exactly when this wetland was discovered by TGP and when DEM was made aware of its existence. TGP claims that it discovered Wetland 70 on December 17, 1991 and told a DEM inspector about it the next day. Tr. at 262; TGP Br. at 6. TGP included a description of its treatment of Wetland 70 in the progress reports submitted to DEM. Tr. at 264. DEM admits receiving, sometime in December, 1991, complaints about illegal wetland alterations, but contends that no formal on site inspections took place until June 9 and June 23, 1992 when DEM officially realized the potential that a wetland not covered by the issued permit was being altered. Tr. at 45, 50. As a result of those inspections, DEM's suspicions were confirmed.
Because a wetland that had not gone through the public notice and comment procedures required of R.I.G.L. § 2-1-21 and R.I.G.L. § 2-1-22 was being altered, on July 15, 1992 DEM issued a Notice of Suspension of Permit and Order ("NSPO"). Tr. at 63. Specifically, DEM issued the NSPO because the plans submitted in support of TGP's application failed to "adequately represent the wetlands and limits of alterations taking place in these wetlands," and, thus, were false or erroneous. See NSPO. The NSPO ordered TGP to cease and desist from additional alteration or work pursuant to the permit. Id. The NSPO further ordered a suspension of the permit and ordered TGP to comply with the public notice and comment requirements of R.I.G.L. § 2-1-22, including the submission of all documentation of existing construction activity. Id. However, the NSPO was rejected by the Hearing Officer on June 29, 1993, after a hearing. Plaintiff, along with the Lawrences, other nearby property owners, intervened as a party to that hearing.
The Hearing Officer found that Wetland 70 was not included in the application materials submitted in support of TGP's permit, but that there was insufficient evidence "to prove the allegations set forth in the NSPO by a preponderance of the evidence." Hrg. Off. at 40. The Hearing Officer also found that DEM had jurisdiction over the wetland at issue. Id.
Nevertheless, the Hearing Officer recommended to the director that the NSPO not stand. The basis for the finding that the NSPO should be revoked was not only that the allegations contained in the NSPO were not proven to the satisfaction of the Hearing Officer, but also that the NSPO was not issued until after TGP had essentially completed the pipeline construction. Id. Thus, "the submission of new plans (or other documentation) at this time for the specific area of concern, would serve no useful purpose." Hrg. Off. at 39-40.
On August 11, 1993, the director of the Department of Environmental Management rejected two of the recommendations of the Hearing Officer. Final Decision at 1. The director found that DEM did prove by a preponderance of the evidence that TGP's application materials were false and erroneous and that, consequently, DEM was entitled to the relief requested in the NSPO. Id. However, despite finding sufficient evidence to support the NSPO, the director accepted the Hearing Officer's recommendation to deny the relief requested in the NSPO. Id.
The director found that TGP had "demonstrated good cause why the Notice of Suspension of the Permit and Order should not stand in that the construction of the pipeline has been completed under the permit and the requested remedies would serve no useful purpose." Id. The director's rejection of the NSPO was appealed by Plaintiff.
Plaintiff's timely appeal of the original granting of the permit to TGP is No. 91-6342. Consolidated with that appeal is Plaintiff's timely appeal of the denial of the NSPO, which is No. 93-4996. Both appeals are currently before this Court.
STANDARD OF REVIEW
Superior Court review of an agency decision is controlled by G.L. 1956 (1993 Reenactment) § 42-35-15(g) which provides:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or law;
(5) Clearly erroneous in view of the reliable probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Accordingly, when reviewing an agency decision, the court must not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of the evidence.Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309. (R.I. 1988). The court is limited to a determination of whether there is any legally competent evidence to support the decision.Barrington School Committee v. Rhode Island Labor RelationsBoard, 608 A.2d 1126, 1138 (R.I. 1992). Legally competent evidence is indicated by the presence of some or any evidence supporting the agency's finding. Sartor v. Coastal ResourcesManagement Council, 542 A.2d 1077, 1082 (R.I. 1988). However, the court may vacate the agency's decision if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record. Milardo v. CoastalResources Management Council, 434 A.2d 266, 270 (R.I. 1981). The above standard, however, does not preclude judicial review of questions of law and their application to the facts. Turner v.Dept. of Employ. Sec. B. of Rev., 479 A.2d 740, 742 (R.I. 1984).
The Instant Appeals
In these consolidated appeals, the first issue to be decided is that contained in No. 91-6342, which challenges the validity of DEM's original permit to TGP.
Plaintiff's amended complaint makes several allegations that TGP's construction will harm Plaintiff's property. Plaintiff claims that blasting might impair a historic farmhouse on her property; noise, dirt and blocked access will cause injury to Plaintiff; and harm might result to a nearby brook. Since December 10, 1991 when the amended complaint setting forth these allegations was filed, TGP has completed construction of the pipeline. As the potential harm to the nearby brook, the harm to the historic farmhouse and the inconvenience of the noise, dirt and blocked access did not materialize, these issues have been rendered moot by the lateness of this appeal. See Town ofScituate v. Scituate Teachers Association, 110 R.I. 679,296 A.2d 466 (1972).
Plaintiff's amended complaint further alleges that TGP's project requires alteration of a wetland which crosses Plaintiff's property and which is not covered by TGP's permit. Based on this allegation and the allegations dismissed above, Plaintiff contends that the permit should be revoked. At this time, TGP's permit has terminated by its own terms.[1]
Furthermore, all of the alterations the permit purports to allow, plus the alteration of Wetland 70, have been completed. Tr. at 108. Therefore, revoking the permit now will achieve nothing and is, in fact, impossible since no permit even exists any longer. Thus, consideration of this issue is also rendered moot. Usually, a "court will not review a case if its mandate would be of no assistance to the party seeking review — especially when that which is sought has already been accomplished." Phelps v. BayStreet Realty Corp., 425 A.2d 1236, 1239 (R.I. 1981). Here, revocation of the permit has, in effect, already been accomplished since the permit has terminated. Because this case "raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy," the case is moot. Karen M. Tate v. Department of Human Services, C.A. 92-3116, May 12, 1993, Grande, J. (citing Seibert Farms v. R.Gary Clark Tax Administrator, C.A. 90-518, February 5, 1993, Shea, J.) Unlike in Tate, however, the Plaintiff's claim here is not "capable of repetition" in the Plaintiff's particular situation. TGP's permit has expired and all construction is completed so the original issuing of the permit, which is what is being appealed in this instance, does not "continue to. . . affect' the Plaintiff. Id. If anything is continually affecting the Plaintiff, it is the impact of TGP's unauthorized actions and not the initial granting of the permit. That impact is not what is being appealed in the instant appeal of the permit order, No. 91-6342, which is moot. However, with respect to the ultimate resolution of both of these appeals, the record reveals that the procedure followed by DEM was proper and that the permit issued by DEM was valid as to the wetlands contained in the permit, those being wetlands #1-69. The validity of the permit and the propriety of the procedure followed by DEM are unaffected by the fact that TGP altered a wetland not covered by their permit, a fact alleged in Plaintiff's complaint and undisputed by the parties. That illegal alteration reflects only upon TGP and not on DEM. DEM properly denied TGP's first application of plans pursuant to R.I.G.L. § 2-1-21(a) because two municipalities objected to the originally proposed pipeline route. Those plans were submitted in accordance with R.I.G.L. § 2-1-21, which states that no one may alter a wetland covered by the legislation "without first obtaining the approval of the director of the department of environmental management."
The pipeline depicted on TGP's initial application for the permit did not interfere with Wetland 70, so that wetland was not included at all in that original application. Tr. at 37. When the pipeline route was changed, after DEM's denial of TGP's first application, and Wetland 70 became affected, apparently neither DEM nor TGP was aware of the wetland's existence. Consequently, it was not included in the revised application materials either. DEM approved TGP's application based on the revised plans because the revisions did not appear to alter any wetlands not already depicted in the original application, which had already gone through the public notice and comment requirements under R.I.G.L. § 2-1-22. Thus, the permit issued from the revised plans never went through a second public notice and comment period. Such approval of a project without re-noticing is permitted under regular DEM procedure if no wetlands are being altered which have not already gone through the notice and comment requirements. Tr. at 37. In such a situation, the public is already aware of all "significant alterations" which are contemplated and has already received the proper opportunity to object. R.I.G.L. § 2-1-22. Such was the case in this instance. Therefore, the procedure followed by DEM in issuing that permit was proper and the permit validly authorized alterations to the sixty-nine wetlands which had gone through the public notice and comment stages.
Although DEM followed the proper procedure with respect to the permit, TGP did not, and that has resulted in inaccuracies in the plans submitted in support of TGP's permit application. Such inaccuracies formed the basis for DEM's issuance of a NSPO on July 15, 1992 pursuant to the then applicable Rule 10.01 of the Rules and Regulations Governing the Enforcement of the Freshwater Wetlands Act. This NSPO is the subject of appeal No. 93-4996.
It is uncontroverted in the record that the permit did not include permission to alter Wetland 70, which TGP did, in fact, alter. Since "this evidence was not discredited either by other positive testimony or by circumstantial evidence. . . [it] is ordinarily conclusive. . . ." State v. A. Capuano Bros., Inc.,120 R.I. 58, 63, 384 A.2d 610, 613 (1978). Because of this discrepancy between the permit and what was actually altered, the NSPO alleged that false and erroneous plans, those not depicting Wetland 70, were submitted in 1991 in support of TGP's permit. In the Final Decision issued from the hearing held on the NSPO, the director found that "it is clear that the information provided by Tennessee Gas Pipeline Company in support of its wetlands permit failed to accurately depict freshwater wetlands as they existed." Final Decision at 1. Therefore, the director found that the plans in the application contained false and erroneous information which would support a NSPO, thereby overturning two conclusions of law recommended by the Hearing Officer. Such a contrary finding is allowed since "the agency director need not accept the Hearing Officer's findings if there is other, competent evidence in the record to support the agency's conclusion" and issues other than credibility determinations are involved.Environmental Scientific Corp. v. Durfee, 6321 A.2d 200, 207 (R.I. 1993). Certainly, other competent evidence exists in this case record to support the director's contrary conclusion regarding the veracity of TGP's application. In addition to accepting all credibility determinations of the Hearing Officer, the director accepted the Hearing Officer's findings that DEM had jurisdiction over the wetland in issue and that the "requested remedies" ordered by the NSPO "would serve no useful purpose," because "the construction of the pipeline has been completed under the permit." The Court finds that legally competent evidence supports the director's conclusions and, therefore, affirms the director's Final Decision.
The first remedy ordered by the NSPO was for TGP to "cease and desist" from further work under the 1991 permit. Such a request is rendered moot at this time not only because all work is completed on the pipeline project, but also because the permit has now terminated on its own terms so no more work could be done under that permit even if it had included Wetland 70.
The NSPO further ordered that the permit be suspended. Again, this order is moot since the permit is no longer valid. Consequently, there is no permit to suspend.
Lastly, the NSPO ordered TGP to comply with the permit and notice requirements of R.I.G.L. § 2-1-22 by submitting new plans showing, among other facts, all existing construction activity. As said before, there is no more construction activity taking place since construction is completed and no harm of record has resulted. Moreover, the director found that to go through the permitting procedure at this point "would serve no useful purpose," a finding with which this Court has to agree. The permit process informs the public and DEM of potential harm to wetlands resulting from construction and other alterations, in accordance with DEM's policy to "preserve and regulate the use of swamps, marshlands and other fresh water wetlands." R.I.G.L. §2-1-18. Through this procedure, DEM is able to control how such areas are affected. The primary goal of this procedure is to act before any action is taken and to prevent actions which would negatively affect the wetland areas. Such a procedure would be ineffective against TGP at this time, as the director correctly found.
TGP has contended that when it discovered the wetland shortly after the permit was granted, it did not think the wetland qualified for protection under the applicable statutory scheme. Tr. at 315. As a result of this inaccurate belief and TGP's alleged reliance on comments made by employees, and not the director of DEM, TGP made no effort to apply for a permit to alter this wetland. Tr. at 316. However, § 2-1-22 supplies a procedure for a preliminary determination by the director as to whether a wetland which is subject to DEM's jurisdiction exists. Tr. at 233. This procedure is meant for situations such as this where a wetland is subject to potential harm yet the parties are unsure whether DEM has jurisdiction over the wetland. Had TGP followed this procedure, it would have discovered that Wetland 70 was subject to DEM's jurisdiction, as the director so held in his Final Decision. Final Decision at 1. Further, TGP was wrong in relying on the assertions of mere employees of DEM who thought that DEM did not have jurisdiction over the wetland at issue. The statute clearly requires the director's approval of a project, and only the director is permitted to make such an approval. TGP was on notice that no other method of approval would meet the statutory requirements. Therefore, TGP violated R.I.G.L. §2-1-21's permitting requirements by altering a wetland not covered by a valid permit.
DEM could have ordered restoration as a part of the NSPO pursuant to R.I.G.L. § 2-1-24, but it chose not to because DEM felt that re-noticing the project to allow for public comment was a sufficient remedy under the circumstances. Tr. at 65-66. Plaintiff disagreed with DEM that re-noticing was the proper relief. Accordingly, at the NSPO hearing, Plaintiff requested DEM to order restoration. Tr. at 16. Restoration can be ordered either through a NSPO pursuant to a R.I.G.L. § 2-1-24 or through sanctions for violations pursuant to a G.L. 1956 (1987 Reenactment) § 2-1-23. Since this Court has now affirmed the director's finding that the relief requested in the NSPO will serve no useful purpose, as DEM had originally believed, consideration of a restoration order is appropriate.
Unfortunately, the Hearing Officer and the director were never given an opportunity to explore fully whether restoration activities are necessary in this case. By a motion in limine
which the Hearing Officer granted, DEM prohibited the introduction of testimony regarding "(1) the value of the freshwater wetland, (2) the impact of alterations on the wetland, and (3) any mitigating efforts allegedly taken with respect to the alterations." Tr. at 297-98. Such evidence was held irrelevant to the issue of whether the plans contained false or erroneous information, the subject of the NSPO hearing. Not only did the Hearing Officer agree that the presentation of evidence should be specifically limited to the validity of the NSPO, but he also ruled that restoration and mitigation evidence was not properly before him at the NSPO hearing because the Administrative Adjudication Division is not a court of equity. Tr. at 285. However, unlike the Hearing Officer in the Administrative Adjudication Division, the director of environmental management possesses the power to order restoration as a remedy, but because such relevant testimony was prohibited at the hearing, DEM was never fully informed on the restoration issue. As a result, the director's ability to order restoration relief was restricted.
A restoration order under § 2-1-23 is a matter left to the sound discretion of the director of environmental management who "shall have the power to order complete restoration of the fresh water wetland area involved." Under that same section, a violator of the permit requirements of § 2-1-21 "shall be liable for a fine of up to one thousand dollars ($1,000) for each violation." Although the director is able to decide the exact amount of that fine, unlike a restoration order, the actual imposition of a fine is not discretionary. In this appeal, although the director found that a violation had occurred in his Final Decision, he failed to consider this fine, thereby violating the statutory provisions. Furthermore, the director failed to specifically consider a restoration order. Accordingly, this Court remands this appeal to DEM for consideration of this fine and, if the director finds it appropriate in his discretion, a restoration order pursuant to § 2-1-23.
As to appeal No. 91-6342, this Court makes no specific findings because that appeal has been rendered moot by subsequent events. Therefore, appeal No. 91-6342 is denied. However, this Court does hold, in accordance with the admissions of the parties, that the permit issued to TGP for construction of the pipeline did not include permission to alter Wetland 70. Despite this incompleteness, the procedures followed by DEM were proper and the resulting permit was valid. When Wetland 70 was officially made known to DEM, DEM took the proper measures to rectify the situation by issuing a NSPO.
As to appeal No. 93-4996, this Court finds that legally competent evidence supports the Final Decision of the director of environmental management. Sufficient evidence exists to find that the plans supporting TGP's wetland permit did not accurately include all of the wetlands which were eventually altered by the pipeline construction. Furthermore, the remedies requested by the NSPO would, at this late date, serve no useful purpose. Therefore, the Final Decision is affirmed. This illegal alteration violated R.I.G.L. § 2-1-21. Pursuant to R.I.G.L. §2-1-23, this violation requires DEM to consider sanctions, specifically, a fine for TGP's violation and, if the director so decides, a restoration order for Wetland 70. Accordingly, with respect to appeal No. 93-4996, this matter is remanded to DEM to make a determination as to whether restoration of the wetlands is appropriate and whether a fine should be imposed for this violation. This Court will retain jurisdiction of this consolidated appeal.
Counsel should submit the appropriate judgment for entry.
[1] Permits typically last for one year unless renewed. R.I.G.L. § 2-1-22. Therefore, TGP's permit terminated on August 27, 1992. Tr. at 195-96.