W. Edward **WOOD**

v.

Eleanor **DAVIS** et al.

No. 82–424–Appeal.

Supreme Court of Rhode Island.

March 12, 1985.

Arlene S. Violet, Atty. Gen., Daniel J. Schatz, Sp. Asst. Atty. Gen., Providence, for plaintiff.

Donald A. Woodbine, Providence, for defendant.

## OPINION

MURRAY, Justice.

In this civil action, the director of the Department of Environmental Management (the director of DEM) is seeking to enforce provisions of G.L.1956 (1976 Reenactment) §§ 2–1–18 to 2–1–27, (referred to as the Wetlands Act)[1], against William and Eleanor Davis (the Davises), who allegedly have altered a wetland located on their Smithfield property in violation of the act. In 1979, the director filed a suit seeking equitable relief against the Davises. After a nonjury trial, the Superior Court justice dismissed the complaint and entered judgment for the defendants. The plaintiff appeals to this court from that judgment.

At trial, the evidence presented by the director consisted principally of the testimony of two witnesses who were employees of DEM. Both were qualified by the court as experts in wetlands' inspection and classification. In addition, numerous exhibits, including aerial photographs of defendants' property, were admitted.

Bruce Goodwin, a DEM field inspector from 1971 to 1978 and a supervisor of DEM's "fresh water wetlands" section from 1978 to 1980, testified that he first inspected defendants' property in July, 1977 and identified a swamp. Goodwin pointed out the boundaries of this wetland to William Davis at that time and told Davis that a permit was required prior to filling the swamp. Goodwin saw no rubber tires in the swamp, but he issued a cease and desist order to Davis because some ash from a fire had washed into the swamp.

John Travassos, a senior natural-resources specialist with DEM, testified that he inspected the same property in June, 1978, and identified the same wetland that Goodwin had found earlier. Observing that the swamp had been partially filled with rubber tires, Travassos issued a cease and desist order to William Davis. The DEM also issued a formal notice of violation to Eleanor Davis.

In February, 1979, both Travassos and Goodwin returned to the property and saw men dumping tires into the swamp. Once

---

1. Although not specifically entitled the "Wetlands Act," we will refer to the act as such for convenience.

again, Goodwin informed Davis that a permit was required, and explained further that filling the swamp with tires without a permit also amounted to a violation of the cease and desist order previously issued by Travassos.

Travassos also testified that he inspected the property shortly before trial in June, 1982 and found additional tires, numbering in the millions, dumped in both wetland and nonwetland areas on the Davis property. The plaintiff entered numerous aerial photographs into evidence. After being qualified as an expert on interpretation of aerial photos, Travassos testified that based upon a photograph, no tires were in the wetland on April 11, 1975. A series of ten photos taken on June 9, 1982, according to Travassos, showed a large amount of tires in the wetland. Travassos estimated that the amount of tires dumped on the Davises' property had tripled from his 1978 inspection to his 1982 inspection; 75 percent of the tires were in the wetland. He concluded his testimony by stating that the swamp would regenerate itself if the tires were removed.

The defendants did not place any expert witnesses on the stand refuting plaintiff's evidence proving the existence of the wetland. Both William and Eleanor Davis testified and each acknowledged the existence of the wetland. The Davises admitted that they had been dumping millions of tires in the wetland, conceded that they had been notified by DEM that they were in violation of the act, and William Davis bluntly asserted that he did not apply for a permit "for the simple reason I didn't feel I needed a permit." Davis contended that because he had been dumping since the early 1960s, prior to the passage of the Wetlands Act, he did not need a permit. The defendants introduced a 1974 Department of Health order, a United States District Court order, and a Superior Court order, over plaintiff's objections, in an attempt to show that they had been dumping prior to 1975 and to prove that they had been authorized to dump tires in the wetland.

In addition to never applying for a permit, defendants never requested an administrative review of the cease and desist order or of the violation notice, although the order specified that such a request was allowed. Testimony on both sides was undisputed on these points and on the fact that Davis never complied with the cease and desist order. The director's complaint sought to enjoin the Davises from filling or otherwise altering the wetland without a permit. The director also requested that the Davises be ordered to restore the wetland to its natural state as of July 16, 1971 (the date of the Wetlands Act's passage), by removing the fill.

The trial justice's findings of fact acknowledged that defendants had been dumping tires on their property since the 1960's without a permit. The judge implied, however, as a matter of law, that because the Davises had been dumping prior to the passage of the act, they could continue to do so without seeking the prior approval of the director. He therefore dismissed plaintiff's complaint.

This appeal not only disputes the trial justice's findings of fact, but also raises a legal issue as to whether or not the act exempts persons who were altering wetlands prior to passage of the act, such as the Davises. Additionally, defendants contend that this appeal is improper and must be dismissed because the Wetlands Act does not contain any provisions for a direct appeal. We will deal with the latter jurisdictional argument first.

The defendants correctly state that the director is bound by the provisions of the Administrative Procedures Act pursuant to § 2–1–20.1 of the Wetlands Act. Only following the exhaustion of administrative remedies may an appeal be taken to the Superior Court under the Administrative Procedures Act, G.L.1956 (1984 Reenactment) § 42–35–15, for judicial review of the agency decision. Any review by this court would then result only upon the granting of a writ of certiorari under § 42–35–16.

■ These provisions, however, are not applicable to the instant case. The defendants never applied for a permit to alter the wetland on their property, nor did they request an administrative hearing to challenge the orders issued by DEM against them. In sum, defendants never initiated administrative remedies, much less did they exhaust these remedies. This suit is an equitable action brought by the director as authorized by § 2–1–24(a), as amended by P.L.1980, ch. 406, § 10 of the act. As defendants have been apprised, this court held, in another case involving them, that the director "is authorized to obtain relief in equity or by prerogative writ whenever such relief is necessary to the proper performance of his duties under the wetlands act." *Citizens for Preservation of Waterman Lake v. Davis*, R.I., 420 A.2d 53, 57 (1980). The director's power to seek relief in equity includes the right to appeal if that relief is denied. A direct appeal to this court is authorized by G.L.1956 (1969 Reenactment) § 9–24–1 from *any* "final judgment, decree, or order of the superior court." The director properly filed his complaint for equitable relief in the Superior Court, and we hold that the state is entitled to this direct appeal from the order dismissing their complaint.

■ We now address the issue of the permit requirement. Throughout the course of the trial, and in this appeal, the Davises assert that they are exempt from the requirements of § 2–1–21(a), as amended by P.L.1981, ch. 17, § 1. That section provides that

"[n]o person * * * may excavate; drain; fill; place trash, garbage, * * * or other materials or effluents upon * * * or otherwise alter the character of any fresh water wetland as herein defined *without first obtaining the approval of the director* * * *" (Emphasis added.)

The Davises contend that the law contains a grandfather clause, so that a person who had been altering a wetland prior to passage of the act could simply continue to do so after its enactment without getting a permit from the director. This position finds no support in the language of the statute and inexorably is refuted when considered in the clear light of the Wetlands Act's purposes. The act intends to preserve wetlands in this state, as they existed when the act was passed in 1971, unless permission is granted by the director to allow alterations. The fact that alterations occurred prior to 1971 is irrelevant as to whether or not a permit must be sought in order to continue alterations. The fact that a wetland has been substantially altered prior to 1971 may influence the director's decision to approve a request for a permit, but in no case is the requirement to obtain prior approval for alteration of a wetland eliminated by acts occurring prior to 1971. It is patent that defendants have never applied to the director for a permit to alter the wetland located on their property. Therefore, as a matter of law, the Davises are in violation of § 2–1–21(a) because they admittedly have altered, and presumably are continuing to alter, this wetland without a permit, following the date of passage of the act.

■ A final point of dispute concerns the administrative and judicial orders which were allowed into evidence over plaintiff's objections. The trial justice found that these orders granted the defendants the legal authority to alter the wetland in question. None of these orders, however, specifically permit the Davises to alter the wetland; in fact, as the trial justice noted, the orders do not even refer to the wetland. Neither plaintiff nor the state were even parties to these judicial actions. Under § 2–1–20.2, only the director is authorized to determine which areas in the state are wetlands, and under § 2–1–21, only the director is authorized to approve any alterations to wetlands. Therefore we find, as a matter of law, that the trial justice erred in allowing these orders into evidence and in finding that they authorized defendants to dump tires in the wetland without a permit.

The trial justice's finding of fact that the Davises have been dumping tires and other

material into the wetland since 1960 is consistent with the evidence, and we affirm this finding. As a matter of law, however, we hold that prior approval of the director always is required before a person can lawfully alter a wetland.

Hence we reverse the decision of the trial justice dismissing the director's complaint. We remand this case to the Superior Court, with directions to enter judgment requiring the defendants to obtain a permit prior to any further alterations of the wetland located on their land. Since the record indicates continued unlawful activity by the defendants on this issue, we direct the Superior Court to hold a full evidentiary hearing so that it can determine what other relief is appropriate, including, to the extent found necessary, an order to the defendants to restore the wetland in question.