DECISION
This case is before this Court on appeal from a Final Decision and Order issued by the Department of Environmental Management (DEM) holding Roland Fiore and Anthony Fiore liable for an assessment of administrative penalty in the amount of five thousand ($5000) dollars. Jurisdiction is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts/Travel
In 1988 and 1989, Roland Fiore (plaintiff) submitted plans to the Rhode Island Department of Environmental Management, Division of Freshwater Wetlands, (DEM) seeking permission to alter freshwater wetlands on property he owned in South Kingstown, Rhode Island. See DEM Exhibit 20 and Defendant's Memorandum of Law at 2. The lot, specifically identified as Assessor's Plat 60, Lot 19, is located approximately seventy feet (70') northwest of Wordens Pond Road, and approximately fifty feet (50') east of the intersection of Wordens Pond Road and Leisure Drive in South Kingstown. Id. In 1988, the initial application was sent to public notice and was subsequently denied by DEM. Id. In 1989, the plaintiff again sought DEM approval of a modified proposal for the same property. Id.
On January 12, 1990, DEM granted authorization to the plaintiff so that he could perform certain alterations within the freshwater wetlands on the site. This approval, issued under Freshwater Application No. 86-0120F, allowed the plaintiff to construct a residence, install an individual septic disposal system ("ISDS"), and install a gravel driveway within the freshwater wetlands located on the site. See DEM Exhibits 1 and 5. DEM issued conditional approval for the project as specifically delineated in the plaintiff's approved site plans.Id. The plaintiff sought a renewal for the project, which DEM granted.
In 1991, the plaintiff again applied to DEM to alter further the wetlands on the same site. See DEM Exhibit 10. On September 20, 1992, in connection with application No. 91-0010F, DEM gave plaintiff permission to construct a dock within the wetlands located on the site. See DEM Exhibit 5.
On March 4, 1993, plaintiff Roland Fiore sold the site in question to Anthony Fiore and failed to inform DEM of this change of ownership as required by the terms of the permit issued under Application No. 86-0120F. See DEM Exhibit 1. Anthony Fiore is the plaintiff who owned the site at the time the alterations occurred, which are presently at issue. 10/25/94 Tr. at 57-58,See DEM Exhibits 3 and 12. DEM officials discovered that a driveway was constructed in freshwater wetlands on the subject site in a manner that was not in accord with what DEM had approved. See DEM Exhibit 12. Furthermore, the driveway was installed with pavement rather then gravel, as was required in the application. Id. In addition, DEM officials discovered concrete blocks and soil were placed throughout the property to create a retaining wall in the wetlands. Id. These alterations were not included in Roland Fiore's approved site plans. See DEM Exhibit 5.
The record also indicates that although the dwelling on the site was constructed within freshwater wetlands in accordance with the approved plans, large wooden decks on three sides of the house and a staircase were constructed, which were not included on the approved site plans. Id. Furthermore, although the prior approved plans included the required planting of trees and shrubs to act as a buffer, no buffer existed at the time of inspection.See DEM Exhibits 5 and 12. In fact, the record demonstrates that unapproved extensive clearing and grubbing into the freshwater wetlands had taken place. Id. These alterations occurred in a pond complex, a perimeter wetland, a riverbank wetland, and flood plain in a number of wetland areas. See DEM Exhibits 3 and 12.
After the site inspection, the DEM issued a Notice of Violation and Order ("NOVAO") to Roland Fiore and Anthony Fiore on September 21, 1993, for altering freshwater wetlands without a permit in violation of the Freshwater Wetlands Act, R.I.G.L. § 2-1-22 et. seq. The NOVAO specifically cited the plaintiffs for five instances of alterations of freshwater wetlands, specifically, (1) filling (in the form of soil and concrete blocks) and clearing into a pond complex, a riverbank wetland, and floodplain; (2) filling, (in the form of soil and concrete blocks) and clearing into a pond complex and floodplain; (3) filling (in the form of soil, asphalt, and concrete blocks), grubbing, and clearing in a perimeter wetland and a floodplain; (4) filling (in the form of soil and concrete blocks), construction of wooden decks, and clearing in a perimeter wetland, riverbank wetland, and floodplain; and (5) filling, (in the form of soil and concrete blocks) and clearing in a riverbank wetland and a floodplain. See DEM Exhibit 3.
The NOVAO ordered the plaintiffs to (1) cease and desist immediately from further alterations of the freshwater wetlands; (2) remove all fill material including concrete blocks, asphalt driveway, soil, and decks which were not authorized by the approval granted under Application No. 86-0120F and remove all fill material down to original grade; (3) reestablish all erosion and sedimentation controls to all locations on the site as shown on the approved site plans; (4) establish all grades as approved on the approved site plans; (5) stabilize the disturbed areas on the site with grasses; (6) revegetate certain disturbed areas on the site with plantings of trees and shrubs; (7) comply with all conditions of approval; (8) contact the Department prior to initiating restoration in order to obtain proper supervision and restoration details; and (9) pay an administrative penalty of five thousand dollars ($5,000.00) for the violations. See DEM Exhibit 3.
On October 1, 1993, plaintiffs filed a written request for a formal hearing with the Administrative Adjudication Division ("AAD"). See DEM Exhibit 4. After several unsuccessful attempts to resolve the NOVAO by a consent agreement, the matter was heard before the AAD on October 24, 1994, through October 26, 1994. On October 24, 1994, in the interest of expediting the hearing, the parties stipulated to the factual allegations contained in Instance Nos. (1), (2), (3), (5), and Instance No. (4) except as to the allegation concerning the "construction of wooden decks." (10/24/95 Tr. at 8). As a result, the only disputed issues which remained for hearing concerned: 1) whether the construction of raised wooden decks constituted a violation, and ii) the amount of and the procedure utilized by DEM in assessing the five thousand ($5000) dollar penalty. After the hearing, and the submission of post-hearing memoranda, the Hearing Officer sustained the issuance of NOVAO. The Hearing Officer then submitted his written proposed findings of fact and conclusions of law to the Director of the DEM, who rendered it a Final Agency Decision on December 9, 1995. The plaintiffs have appealed to this Court, and in the interim, requested a stay of the Final Agency Decision and Order pending its appeal, which was granted by the AAD on March 20, 1996.
On appeal, the plaintiffs contend that the Hearing Officer failed to properly implement the Freshwater Wetlands Act, R.I.G.L. § 2-1-21 et. seq. in determining that the construction of wooden decks on the site constituted a violation of the aforementioned Act. In addition, the plaintiffs contend the Hearing Officer misconstrued the Act, as well as R.I.G.L. (1993 Reenactment) § 42-17.6-6, and the Rules promulgated in accordance therewith in sustaining the $5000 penalty which was assessed against the plaintiffs for the violation.
Standard of Review
The review of a decision of an administrative agency by this Court is controlled by R.I.G.L. § 42-35-15 (g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflict of Interests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, et.al. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
On appeal the plaintiffs first argue that no permit is required under the Freshwater Wetlands Act for the construction of wooden decks on the site. Citing to G.L. § 2-1-21 (a), which states:
 "No person . . . may excavate; drain; fill; place trash, garbage, sewage, highway runoff, drainage ditch effluences, earth, rock, borrow, gravel, sand, clay, peat or other or effluents upon; divert water flows into or out of; dike; dam; divert; change; add to or take away from or otherwise alter the character of any freshwater wetland as herein defined without first obtaining the approval of the director of the department of environmental management."
The plaintiffs contend that since the Act does not explicitly prohibit the construction of decks on or in a wetland area, that the construction would "otherwise alter the character of any freshwater wetland." Id.
In the instant action, the Director of DEM, pursuant to authority granted to him under the Wetland Act (§ 2-1-18 et.seq.), ordered the plaintiffs to restore the wetlands that were altered without authorization and to pay a penalty for each violation. The ultimate purpose of the Wetlands Act is to protect the wetlands "from random, unnecessary, and/or undesirable drainage, excavation, filling, encroachment or any other form of disturbance of destruction." G.L. 1956 (1987 Reenactment) §2-1-18; see also, Wood v. Davis, 488 A.2d 1221 (R.I. 1985). This purpose is achieved in part by requiring approval by the Director of DEM prior to the alteration of any freshwater wetland. See
§ 2-1-21 (a). The Act also provides the Director with enforcement power by granting the Director the authority "to order complete restoration of the freshwater wetland area . . . [and to assess] a fine of up to one thousand dollars for each violation." Section 2-1-23, see also, § 42-17.6-2. Thus, the Director has the statutory authority to order full restoration of the wetland as well as the power to assess an administrative penalty.
This Court notes that it is a well-recognized doctrine that deference is accorded to an administrative agency when it interprets a statute the administration and enforcement of which has been entrusted to the agency. Pawtucket Power AssociatesLimited Partnership, et. al. v. City of Pawtucket, 622 A.2d 452, at 456 (R.I. 1993) (citations omitted.) Furthermore, deference is accorded even when the agency interpretation is not the only permissible interpretation that could be applied. Id. (citing toYoung, 476 U.S. at 981, 106 S.Ct. at 2365, 90 L.Ed.2d at 967.) In DEM's Decision and Order the hearing officer concluded that such alterations, including construction of wooden decks absent a permit, are a violation of R.I.G.L. § 2-1-21.(December 9, 1995 Decision and Order at 12.) Accordingly, this Court finds plaintiffs' argument that no permit is required under the Freshwater Wetlands Act to be meritless.
In the alternative, the plaintiffs also argue that the construction of wooden decks on the site is contained within permit #86-0120F issued by the DEM. While the hearing officer made findings that the evidence clearly established that all of the alterations for which the plaintiffs were cited, including the construction of the decks, occurred in an unauthorized manner, the plaintiffs argue that "the decks were not envisioned at the time the permit was issued, and were only erected after the home was constructed but in accordance with that permit." Plaintiffs' Memorandum of Law at 8. A review of the permit clearly indicates that "all proposed construction, grading, etc. within the limits of the 100 year floodplain area shall be accomplished only as approved within this proposal." DEM Exhibit 1, Permit #86-0120F at 3. Accordingly, this Court finds that plaintiffs' argument that the construction of wooden decks on the site is within permit #86-0120F is also without merit.
Finally, the plaintiffs assert that the penalties issued against them are arbitrary and unfair because the division failed to implement the proper policy and procedure in determining the amount assessed. In support of their argument, plaintiff directs this Court's attention to G.L. § 42-17.6-6, which provides in pertinent part:
 "In determining the amount of each administrative penalty, the director shall include, but not be limited to, the following to the extent practicable in his or her considerations:
 (a) the actual and potential impact on public health, safety, and welfare and the environment of the failure to comply;
 (b) the actual and potential damages suffered, and actual or potential costs incurred;
 (c) Whether the person being assessed the administrative penalty took steps to prevent noncompliance . . .;
 (d) Whether the person being assessed the penalty has previously failed to comply with any rule . . . which the director has the authority to enforce;
 . . .
 (i) Whether the failure to comply was intentional, willful, or knowing and not the result of error. . . ."
The plaintiffs contend that the penalties were not assessed in accordance with the law or the criteria set forth by DEM and therefore should be "disregarded." See Plaintiffs' Memorandum of Law at 15.
After review of the record, this Court finds ample evidence to support the DEM's assessment of a $1000 penalty for each violation. Harold Ellis, Enforcement Supervisor of the Wetlands Division, testified that an application to alter wetlands had been made by plaintiff, Roland Fiore, who owned the land in question at the time of application. (10/25/96 Tr. at 116) Mr. Ellis went on to testify that DEM issued a permit to Roland Fiore and that the permit was never transferred to Anthony Fiore, the owner of the subject property during the time that the unauthorized alterations had been discovered. Id.
In addition, Mr. Ellis testified that there are certain criteria which are used for the assessment of the penalty. Id. at 117. Specifically, Mr. Ellis referred to the aerial extent of the violation, how much control the violator had over the occurrence, and whether the violator took reasonable steps to mitigate or eliminate the occurrence of the violation. Id. Mr. Ellis testified that it was his opinion that the $5000 administrative penalty that was assessed was appropriate for the violations on the subject site. Id. at 118. Accordingly, this Court upholds the DEM's assessment of administrative penalties in the amount of five thousand ($5000) dollars.
Upon review of the entire record in this matter, this Court finds that the decision of DEM is supported by substantial evidence and was not made upon unlawful procedure. Substantial rights of the plaintiffs have not been prejudiced. Accordingly, this Court affirms the December 9, 1995 decision of the Department of Environmental Management.
Counsel shall submit the appropriate order for entry.